**UNITED STATES of America, Appellee,**

v.

**Robert Gary MEST, Appellant.**

**No. 85–5210.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1986.

Decided May 1, 1986.

William O. Richardson (Beaver, Thompson, Holt & Richardson, P.A., Fayetteville, N.C., on brief), for appellant.

Janis Kockritz, Dept. of Justice, Washington, D.C., (Samuel T. Currin, U.S. Atty., Raleigh, N.C., on brief), for appellee.

Before HALL and WILKINSON, Circuit Judges, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.

SENTELLE, District Judge:

Robert Gary Mest appeals from his conviction of first-degree murder on a military reservation in violation of 18, United States Code, Section 1111. He based his defense in the trial court solely on an insanity theory. In this appeal, he raises two allegations of error, both directed at limitations placed upon expert testimony offered by him in the trial court. First, he asserts that the retrospective application of Rule 704(b) of the Federal Rules of Evidence is violative of the ex post facto clause of the Constitution; and, second, that the trial court's refusal to permit evidence of a psychiatrist's hypnotic session with the defendant was error. Finding no merit in either of these allegations of error, we affirm.

According to the evidence in the trial below, Appellant Mest moved in with his subsequent victim (his ex-wife) on the military reservation at Fort Bragg, North Carolina, while her soldier husband was off on 30-day maneuvers. He remained with her for approximately two weeks, until August 31, 1984, when she returned from a nightclub accompanied by two unidentified men, with whom she watched X-rated movies and had sexual relations. This so depressed the appellant that, after observing the activity, he attempted to kill himself by taking an entire bottle of the victim's "heart medication," a drug called Limbatrol. The following day, his ex-wife and two neighbors took Mest to a hospital emergency room, where he refused treatment, stating that he wanted to die, after which he returned home with his ex-wife. During the course of the next two days, a neighbor tried several times to contact Mest's victim and, upon receiving no response either by telephone or to knocks at the door despite hearing children inside, she became alarmed and contacted the military police. Upon investigation, the police found Mest suffering from massive loss of blood, with his wrists slashed, in the living room of the decedent's house and the nude body of the victim in an upstairs bedroom, under the words "I loved her to death" printed on the wall in appellant's blood. Defendant again attempted suicide by stabbing himself in the stomach in the presence of the military police, but medical intervention saved his life so that he could stand trial. An autopsy disclosed that the victim died of asphyxiation.

In addition to other evidence of guilt, the government offered confessions by the defendant.

At the trial, in which the defendant elected not to testify, the essential facts as set forth above were substantially undisputed. The defense rested entirely on a theory of insanity and psychiatric testimony in support of that theory. Two government psychiatrists testified for the prosecution. While they related various personality disorders, a bizarre background, and a diagnosis of severe situational depression and sexual sadism, each testified that in his opinion

the defendant was not "suffering from a severe mental disorder." Dr. Rose, a defense witness, testified to similar disorders as those described by the prosecution witness and also expressed the opinion that defendant was suffering the residual effects of the overdose taken in the suicide attempt. Additionally, defense counsel attempted to ask Rose:

Dr. Rose, do you have an opinion as to whether or not Mr. Mest at the time of this alleged event could by virtue of his mental condition, discern the wrongfulness of his behavior and had the capacity to conform his behavior to the requirements of the law should he have so chosen?

Tr. at 384. The prosecution objected. The court sustained by reason of the then recent amendment to Rule 704 of the Federal Rules of Evidence.

That amendment, which added to the rule the entirety of subparagraph (b), provides:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact.

This amendment was enacted October 12, 1984.[1] Appellant's crime was committed August 31, 1984. Thereby hangs appellant's first assignment of error. He contends that this application of the new rule violates the following constitutional provision: "No ... ex post facto law shall be passed." U.S. Const. art. I, § 9, Cl. 3.

■ In order properly to rule on appellant's exception, we must first define the meaning of "ex post facto law." Basically, it is an enactment, criminal or penal in nature, which is retrospective and disadvantages the offender affected by it. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). But a procedur-

al change, although retrospective in application, is not violative of the ex post facto clause if it does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt...." *Id.*, at 29, n. 12, 101 S.Ct. at 964, n. 12, *quoting Hopt v. Utah*, 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884). This rule has been applied in varying situations. By way of example: *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (retrospective application of an amended capital sentencing procedure permitting judicial review of a jury determination on sentencing is not ex post facto); *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (a change in the mode of criminal trials allowing joint trials for codefendants instead of separate trials provided by prior law is not ex post facto); and *Hopt v. Utah, supra* (an enlargement in the class of competent witnesses to include convicted felons is not ex post facto).

■ Appellant argues that merely styling a change as procedural does not take that change out of the ex post facto law category and points to the language of Mr. Justice Case in *Calder v. Bull*, 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798), in categorizing the statutes proscribed by the relevant clause of the Constitution, in which he included:

[E]very law that alters the legal rules of the evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Id.* at 390. The short answer to this argument is that the change in the rules of evidence effected by the enactment of Rule 704(b) does not receive less or different testimony in order to convict the offender but, rather, changes the style of question and answer that can be used to establish both the offense and the defense thereto. Every actual fact concerning the mental condition of the defendant presentable by

---

1. This amendment was contained in the Insanity Defense Reform Act of 1984 (IDRA), Title IV of the Comprehensive Crime Control Act of 1984. Pub.L. 98–473, Title IV, § 406, Oct. 12, 1984, 98 Stat. 2067.

the defense's psychiatrist or, for that matter, the government's psychiatrist is still as admissible and as required after the enactment of 704(b) as before. The change, rather, is to whether either of these categories of witnesses can instruct the trier of fact (in this instance, the jury) as to what its findings should be on the factual questions about which the witness could before and can now testify.[2]

As the cases listed above, conspiciously *Hopt v. Utah,* indicate, that sort of change in the permissible methods of presentation of evidence does not constitute a violation of the ex post facto clause. Perhaps even more instructive is *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898), which, like the case at bar, involved a prosecution for murder. In the first trial of Defendant Thompson, the State of Missouri offered and the court received certain handwritten letters for the purpose of comparison with threatening letters and a prescription for a poisonous substance allegedly written by the defendant. The Supreme Court of Missouri reversed on the basis that the then prevailing laws of evidence in that state did not permit the receipt of the handwritten letters for purposes of comparison. Between that deci-

sion and the retrial of the murder case, the Missouri Legislature passed a new act amending that state's evidentiary law to permit "comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine...." *Id.,* at 381, *quoting* Laws Missouri, April 8, 1895, p. 284.

In the retrial, this change in the evidentiary law was applied retroactively and defendant was again convicted. The state supreme court affirmed, and the defendant appealed to the United States Supreme Court, which held:

[A] statute is not (ex post facto) unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed. And, therefore, it is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense charged against him.

*Id.,* at 386. The Court went on to say, in language equally applicable to the question before us, that the statute:

[D]id not require "less proof, in amount or degree," than was required at the

---

**2.** The legislative history of the amendment to Rule 704 recites the reason for the rule in terms illustrated by this case:

The purpose of this amendment is to eliminate the confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact. Under this proposal, expert psychiatric testimony would be limited to presenting and explaining their diagnoses, such as whether the defendant had a severe mental disease or defect and what the characteristics of such a disease or defect, if any, may have been. The basis for this limitation on expert testimony in insanity cases is ably stated by the American Psychiatric Association:

[I]t is clear that psychiatrists are experts in medicine, not the law. As such, it is clear that the psychiatrist's first obligation and expertise in the courtroom is to "do psychiatry," i.e., to present medical information and opinion about the defendant's mental state and motivation and to explain in detail the reason for his medical-psychiatric conclusions. When, however, "ultimate issue" questions are formulated by the law and put to the expert

witness who must then say "yea" or "nay," then the expert witness is required to make a leap in logic. He no longer addresses himself to medical concepts but instead must infer or intuit what is in fact unspeakable, namely, the probable relationship between medical concepts and legal or moral constructs such as free will. These impermissible leaps in logic made by expert witnesses confuse the jury. [Footnote omitted.] Juries thus find themselves listening to conclusory and seemingly contradictory psychiatric testimony that defendants are either "sane" or "insane" or that they do or do not meet the relevant legal test for insanity. This state of affairs does considerable injustice to psychiatry and, we believe, possibly to criminal defendants. In fact, in many criminal insanity trials both prosecution and defense psychiatrists do agree about the nature and even the extent of mental disorder exhibited by the defendant at the time of the act.

*citing Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); and American Psychiatric Association Statement on the Insanity Defense, Dec. 1982, at 15.

time of the commission of the crime charged upon him. It left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible, and did not disturb the fundamental rule that the [prosecution] ... must overcome the presumption of his innocence and establish his guilt beyond a reasonable doubt.

*Id.,* at 387.

In the only reported case which we have located addressing the change in Rule 704 in relation to the ex post facto clause, the Southern District of Ohio followed the Supreme Court language from *Dobbert v. Florida, supra,* to the effect that:

The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or degree of proof necessary to establish his guilt, all remain unaffected by the subsequent statute.

That court, therefore, concluded:

That application of the newly amended Rule 704(b) to expert testimony introduced in the instant case does not violate Article I, Section 9's prohibition against ex post facto laws.

*United States v. Prickett,* 604 F.Supp. 407 (S.D.Ohio 1985). Neither does it in this case, and we find no merit in appellant's first assignment of error.[3]

■ Appellant's only other assignment of error concerns a further limitation placed on the evidence offered through defendant's expert, Dr. Rose. The trial court allowed the prosecution's motion in limine to prevent the introduction of evidence concerning a videotaped hypnotic session conducted with the defendant by Dr. Rose. Appellant contends that this evidence, although concededly hearsay, is rendered admissible by Federal Rule of Evidence 703, which states:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

While appellant made no record in the court below as to whether or not his expert in fact relied on the videotaped session or whether experts in the particular field practiced by Dr. Rose reasonably do rely on such facts or data, he argues at length for the general proposition that evidence of hypnotic sessions should be admissible. We need not decide this general question. In addition to the lack of a record below, the particular facts before this court simply do not raise the general question for decision. In this case, the videotape apparently amounted to a recitation of recollection of the events of the offense by the defendant. A similar situation was before the Ninth Circuit in *United States v. McCollum,* 732 F.2d 1419 (9th Cir.1984). As that court noted:

The attempt to introduce the tape essentially amounted to an effort to put the defendant's testimony directly before the jury without subjecting him to the cross-examination and impeachment that would have followed had he taken the witness stand. Excluding this taped testimony was well within the court's discretion.

*Id.,* at 1422. So was it here, and that exclusion is without error.

Appellant attempts to distinguish *McCollum* on the basis that in that case the trial court had allowed the expert witness to be examined on the defendant's extrajudicial statements made in the hypnotic session and only the tape itself was excluded, while in the case at bar the government's motion in limine, allowed in its entirety, was directed both to the videotape and to the witness' testimony concerning the events which occurred during the hypnotic session. While appellant is correct that the trial court's ruling here did differ from that in *McCol-*

---

**3.** We note that the IDRA also shifted the burden of proof on the issue of insanity from the prosecution to the defendant and for the first time codified a definition of insanity in the United States Code. Pub.L. 98–473, § 402(a), Oct. 12, 1984, 98 Stat. 2057; 18 U.S.C. § 20. The parties agreed that these changes are substantive, and the court did not apply them retroactively.

*lum* in that particular, this distinction does not compel reversal. In the first place, the language of Rule 703 quoted above, while permitting the introduction of facts and data relied upon by the expert if meeting the reasonable reliance test stated in the quoted language, does not compel the admission of any evidence desired by a litigant simply because that otherwise inadmissible evidence can be styled by one expert witness as something he relied upon in reaching his opinion. See *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking,* 576 F.Supp. 107, 158, n. 70 (E.D.Del.1983). As previously noted, the record in the case at bar is otherwise silent as to this foundation.

Secondly, appellant's argument ignores the fact that his expert witness was permitted to testify extensively as to other extrajudicial statements of the defendant as bases for his opinion. So that even if we were to hold that appellant had made an adequate record below on this question, and even if this court were to hold that the court below had erred in its exclusion, such error, had there been one, would have been harmless.

In short, there being no merit in either of appellant's assignments of error, the judgment below is

AFFIRMED.