**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Annette Cecelia ALEXANDER, Defendant-Appellant.**

No. 85–8635.

United States Court of Appeals, Eleventh Circuit.

Dec. 15, 1986.

Paul S. Kish, Federal Defender Program, Inc., Atlanta, Ga., defendant-appellant.

William R. Toliver, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before CLARK, Circuit Judge, HENDERSON *, and WISDOM **, Senior Circuit Judges.

CLARK, Circuit Judge:

Annette Cecelia Alexander appeals from her conviction on two counts of possession

---

\* *See* Rule 3(b), Rules of U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

of stolen mail matter in violation of 18 U.S.C. § 1708. In this appeal she raises two issues: (1) whether the retrospective application of Rule 704(b) of the Federal Rules of Evidence violates the ex post facto clause of the Constitution; and (2) whether the 1984 amendment to Fed.R.Evid. 704 violates the equal protection clause of the Constitution. We affirm.

## I. FACTS

Alexander was indicted on August 10, 1983. Count one of the indictment alleged that on or about the first of November, 1982, Alexander unlawfully had in her possession a public assistance check, issued by the Georgia Department of Human Resources, that had been stolen from the mails. Count two charged her with unlawfully possessing another stolen public assistance check on or about the first of January, 1983. After entering a plea of not guilty, Alexander filed a notice of intent to rely on the defense of insanity. Prior to trial, Alexander filed a motion in limine contending that the recent amendments to Fed.R.Evid. 704 should not apply in her case. Both parties agreed that the substantive changes in the defense of insanity contained in the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837 (1984), should not apply in Alexander's case because the crimes charged occurred prior to the effective date of the new law. The government, however, urged the court to apply that part of the law that amended Rule 704.[1]

On the morning of trial, the district court conducted a hearing to consider Alexander's motion in limine. After hearing arguments, the court ruled that amended Rule 704 would apply in Alexander's case.

At trial, the evidence indicated that on the dates alleged in the indictment Alexander had been given stolen public assistance checks by two men who asked her to cash them. Alexander obtained false identification cards by using the names and addresses of the payees as they appeared on the checks and inventing social security numbers for them. She then used the identification cards to cash the checks.

Alexander introduced evidence consisting of medical records and expert testimony showing that she suffered from a mental disorder. Dr. Dave Davis, an expert in psychiatry, testified that he had examined Alexander and her medical records and that she suffered from paranoid schizophrenia, with an accompanying variety of hallucinations and delusions. Alexander's medical records indicated that she had suffered from this illness for many years and had a history of medical admissions and hospitalizations as a result of her condition. In a repetitive cycle, Alexander would be admitted to a psychiatric facility when she manifested symptoms of her mental illness. Her treatment included medication, usually a shot of Prolixin, that would seemingly improve her condition for an approximate two-week period. After receiving an injection, Alexander's condition would stabilize and she would be discharged. After her release, Alexander would fail to maintain her out-patient treatment and her condition would slowly deteriorate. When her behavior became increasingly bizarre and psychotic, Alexander would once again come to the attention of the authorities and she would be readmitted. Alexander's medical records showed that she had been admitted to Georgia Regional Hospital on November 8, 1982, one week after the date of the crime alleged in count one of the indictment. She was allowed a trial visit home on November 19, and she was finally discharged on December 29, 1982. The crime alleged in count two of the indictment took place on or about January 1, 1983, three days later. By January 20, Alexander's condition had deteriorated so badly she was rehospitalized. Due to the court's ruling that applied Rule 704(b) in her trial, Alexander was not permitted to ask Dr. Davis whether he thought she was legally insane at the time of the commission of her crimes. The jury convicted

---

**1.** Rule 704 was amended by section 406 of the Insanity Defense Reform Act of 1984, which is chapter IV of Title II of the Comprehensive Crime Control Act of 1984.

Alexander on both counts and she was sentenced to a year and a day on each count. Execution of the sentence for one count was suspended by the court and she was placed on five years probation with the special condition that she receive psychiatric treatment.

## II. *THE EX POST FACTO ISSUE*

The Comprehensive Crime Control Act of 1984, effective October 12, 1984, made several changes affecting the defense of insanity. The primary substantive change, contained in 18 U.S.C. § 20, altered the test for insanity and shifted the burden of proof on the issue to the defendant.[2] In addition, the Act also amended Rule 704 of the Federal Rules of Evidence. Prior to the passage of the Act, former Rule 704 provided:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

As amended, Rule 704 provides:

> (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
>
> (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The crimes for which Alexander was indicted occurred on or about the first day of November, 1982, and on or about the first day of January, 1983. The provisions of the Comprehensive Crime Control Act of 1984 took effect on October 12, 1984. Alexander was convicted after a two day trial on June 3, 1985. Alexander's first assignment of error contends that the application of Rule 704(b) of the Federal Rules of Evidence violates the ex post facto clause of the Constitution. U.S.Const. art. I, § 9, cl. 3.

In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court outlined the two elements necessary to establish an ex post facto law: (1) the law must be retrospective, and (2) it must disadvantage the offender affected by it. The Supreme Court, however, has also held that a change in the law which is merely procedural is not ex post facto even if it is applied retrospectively and to the disadvantage of the defendant so long as it does "not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262, 269 (1884). This principle has been demonstrated in *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), where the Court held that the retrospective application of amendments to Florida's capital sentencing procedure permitting judicial review of a jury determination on sentencing was not in violation of the ex post facto clause. Also, in *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), the Supreme Court ruled that allowing joint trials for codefendants instead of separate trials as provided by prior law was permissible and held that "statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a de-

---

**2.** Section 20(a) characterizes insanity as an affirmative defense in which the defendant, as a result of severe mental disease or defect, was unable to appreciate the wrongfulness of his acts. Formerly, the standard was whether, as a result of mental disease or defect, the defendant lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. *Blake v. United States,* 407 F.2d 908, 916 (5th Cir.1969) (en banc).

Section 20(b) places the burden of proof on the defendant to prove by clear and convincing evidence his insanity. Prior to the amendments, the government bore the burden of proof. *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

Both parties agreed that these changes were substantive in nature, and since they had been enacted after the commission of the crimes, they would not apply in this case.

fense and which operate only in a limited and unsubstantial manner to his disadvantage" are not ex post facto. *Id.* at 170, 46 S.Ct. at 69. In *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), the Court stated that "it is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense charged against him." *Id.* at 351, 18 S.Ct. at 623.

■ In this case, Alexander is not deprived of the defense of insanity by the retrospective application of Rule 704(b). The ingredients of the defense were not changed by the use of Rule 704(b) in this case and Alexander was allowed to question her expert witness, Dr. Davis, extensively ɪegarding her mental condition. Alexander was free to present any and all evidence tending to prove her claim of insanity. Rule 704(b) operated only to prevent her from asking her expert witness to express his opinion regarding the ultimate issue in this case. That is, Dr. Davis was not allowed to say whether he thought Alexander was insane at the time of the commission of the offenses.

Two circuits have recently dealt with this same issue and in both cases have found the application of Rule 704(b) not to be an ex post facto violation. In *United States v. Mest,* 789 F.2d 1069 (4th Cir.1986), the Fourth Circuit remarked that "the change in the rules of evidence effected by the enactment of Rule 704(b) does not receive less or different testimony in order to convict the offender but, rather changes the style of question and answer that can be used to establish both the offense and the defense thereto." *Id.* at 1071. The Sixth Circuit in *United States v. Prickett,* 790 F.2d 35 (6th Cir.1986), dismissed an ex post facto argument and stated:

> New Rule 704(b) has no impact upon the crimes for which Prickett has been indicted nor on the punishment prescribed by Congress. Nor does Rule 704(b), as amended, change the quantity or degree of proof necessary to establish his guilt.

While the new Rule 704(b) may work to disadvantage the introduction of expert testimony as to mental condition at the time of his alleged offenses, it does not deprive him of an insanity defense.

*Id.* at 37.

The rationale of these decisions applies with equal force to Alexander's case. Application of Rule 704(b) in this instance did not violate the ex post facto clause of the Constitution.

### III. *THE EQUAL PROTECTION ISSUE*

Alexander also argues that the 1984 amendment to Rule 704 violates the equal protection clause of the Fourteenth Amendment. She contends that the statute is unconstitutional because it limits her fundamental right to present witnesses in her behalf and because there are no compelling reasons to justify that limitation. According to Alexander, Rule 704 is discriminatory in that it allows those defendants not pleading insanity to utilize an expert witness to testify about an ultimate issue while prohibiting those defendants pleading insanity from using an expert witness for that purpose. Alexander argues that a "strict scrutiny" standard must be applied to this statute, and hence, it must fail because it has not been precisely tailored to further a compelling government interest.

Alexander's argument, however, presents no authority to support her contention that the right to present witnesses is fundamental for equal protection purposes. The Supreme Court has labelled the right to present witnesses as fundamental in the context of *due process. Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The *Chambers* Court also stated, however, that in the exercise of the right to present witnesses, the accused "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 302, 93 S.Ct. at 1049.

The legislative history of the adoption of Rule 704(b) demonstrates that Congress did

have a compelling governmental interest in mind when enacting the 1984 amendments:

*The purpose of this amendment is to eliminate the confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact.* Under this proposal, expert psychiatric testimony would be limited to presenting and explaining their diagnoses, such as whether the defendant had a severe mental disease or defect and what the characteristics of such a disease or defect, if any, may have been. The basis for this limitation on expert testimony in insanity cases is ably stated by the American Psychiatric Association:

[I]t is clear that psychiatrists are experts in medicine, not the law. As such, it is clear that the psychiatrist's first obligation and expertise in the courtroom is to "do psychiatry," i.e., to present medical information and opinion about the defendant's mental state and motivation and to explain in detail the reason for his medical-psychiatric conclusions. When, however, "ultimate issue" questions are formulated by the law and put to the expert witness who must then say "yea" or "nay," then the expert witness is required to make a leap in logic. He no longer addresses himself to medical concepts but instead must infer or intuit what is in fact unspeakable, namely, the probable relationship between medical concepts and legal or moral constructs such as free will. These impermissible leaps in logic made by expert witnesses confuse the jury. [Footnote omitted.] Juries thus find themselves listening to conclusory and seemingly contradictory psychiatric testimony that defendants are either "sane" or "insane" or that they do or do not meet the relevant legal test for insanity. This state of affairs does considerable injustice to psychiatry and, we believe, possibly to criminal defendants. In fact, in many criminal insanity trials both prosecution and defense psychiatrists do agree about the nature and even the extent of mental disorder exhibited by the defendant at the time of the act.

*Psychiatrists, of course, must be permitted to testify fully about the defendant's diagnosis, mental state and motivation (in clinical and commonsense terms) at the time of the alleged act so as to permit the jury or judge to reach the ultimate conclusion about which they and only they are expert.* Determining whether a criminal defendant was legally insane is a matter for legal fact-finders, not for experts.

S.Rep. No. 225, 98th Cong., 1st Sess. 230–31, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3412–13 (emphasis added) (footnotes omitted).

Plainly, Rule 704(b) was rationally drawn to advance the compelling governmental interest of insuring that juries, as the ultimate finders of fact, should be left to make the insanity determination without having to be subjected to a confusing battle of the experts. *Chambers* requires that rules of procedure or evidence must be "designed to assure both fairness and reliability in the ascertainment of guilt or innocence." 410 U.S. at 302, 93 S.Ct. at 1049. Rule 704(b) is clearly within this description.

Rule 704(b) does not abolish either the defense of insanity or the use of expert testimony to establish that defense. It does place constraints on how that testimony may be elicited by forbidding an expert witness from stating an opinion or inference as to the legal insanity of the accused. But as the legislative history of Rule 704(b) shows, "[p]sychiatrists, of course, must be permitted to testify *fully* about the defendant's diagnosis, mental state and motivation (in clinical and commonsense terms) at the time of the alleged act so as to permit the jury or judge to reach the ultimate conclusion about which they and only they are expert." S.Rep. No. 225, 98th Cong., 1st Sess. 231, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3413.

In practical effect, this means that courts should be liberal in admitting testimony (and evidence) regarding the issue of insanity so long as that testimony does not violate the restriction of Rule 704(b). The long standing position of this court has been to permit the introduction of all evidence relating to the issue of insanity. *See Boykins v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir.1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985); *United States v. McRary*, 616 F.2d 181, 184 (5th Cir.1980). In *United States v. Davis*, 523 F.2d 1265 (5th Cir.1975), the court stated that "where a defense of insanity is raised, the trial court should be liberal in its rulings on the admissibility of evidence bearing on that issue." *Id.* at 1267. All evidence relevant or pertinent to the issue of insanity should be admitted. This is in keeping with the philosophy of letting in all facts which might be helpful to the jury in making the final determination of the criminal responsibility of the accused. *Blake v. United States*, 407 F.2d 908 (5th Cir.1969) (en banc). "In resolving the complex issue of criminal responsibility, it is of critical importance that the defendant's entire relevant symptomatology be brought before the jury and explained." *Gordon v. United States*, 438 F.2d 858, 883 (5th Cir.), *cert. denied*, 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971).

Defendants should be free, as Alexander was in this case, to question expert witnesses extensively concerning their diagnosis of the defendant's mental condition, its symptoms and treatment, and the effect such condition or illness may have on a defendant's mental state. In addition, any relevant medical records or reports should be admitted into evidence and the defendant should be allowed to question an expert witness about them so they may be explained or interpreted for the jury. Only in this manner may the jury be sufficiently informed to make a decision on the defendant's legal sanity. The operation of Rule 704(b) makes it essential that juries be completely informed. A liberal approach towards the admissibility of evidence relating to the issue of insanity ensures this.

Alexander was the beneficiary of this liberal approach. She was allowed to enter evidence and present testimony dealing with her mental illness, its symptoms and treatment, and her many hospitalizations. She was denied, by operation of Rule 704(b), the right to have her expert witness express his opinion as to her legal sanity at the time of the commission of the alleged crimes. While the application of Rule 704(b) in this case may have disadvantaged Alexander to that extent, it did not deprive her of the insanity defense. It merely placed the responsibility for the determination of that ultimate issue where it belonged, with the jury.

The conviction of the appellant is AFFIRMED.