**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Roland Arthur EDWARDS,**
**Defendant-Appellant.**

**No. 86–5373.**

United States Court of Appeals,
Eleventh Circuit.

June 12, 1987.

Harry M. Solomon, Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Myra Reyler Lichter, Sonia O'Donnell, Charles V. Senatore, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and VANCE, Circuit Judges, ATKINS *, Senior District Judge.

VANCE, Circuit Judge:

Roland Edwards was charged with unarmed bank robbery under 18 U.S.C. § 2113(a). He pleaded not guilty by reason of insanity. After a two day trial, a jury returned a verdict of guilty. Edwards appeals, claiming that the district court allowed improper psychiatric testimony. He argues that the district court erred in permitting a government witness to give opinion testimony in violation of Fed.R.Evid. 704(b).[1] We affirm.

On April 30, 1984, Edwards entered a bank in Naples, Florida and handed a teller a note demanding that she place all "twenties, fifties, and hundreds" in a bank bag. The note was handwritten and legible. Edwards told the teller that he had worked in a bank, "knew what he was doing," and warned her "not to do anything." Edwards carried a vinyl zipper bag which contained a bulky L-shaped object. Throughout the robbery, he kept his right hand inside the bag, handling the object in such a way that the teller though it was a gun. Edwards left the bank with $2,040. He sprinted to a pick-up truck and sped away.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Federal Rules of Evidence 704(b) provides: No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

A bystander thought he saw the name "Edwards Construction" on the side of the getaway vehicle. Shortly after the robbery, sheriff's deputies located Edwards' ex-wife. She contacted Edwards using a beeper that he carried. Edwards returned her call, and at his ex-wife's urging, Edwards admitted that he had "robbed a bank."

At trial Edwards did not contest his role in the bank robbery, but argued that he was insane at the time that he committed the offense. Edwards' ex-wife and an old friend testified that they believed Edwards to be incapable of criminal activity. The crux of the defense case, however, was the testimony of Doctor Adolfo Vilasuso, a board-certified psychiatrist. Doctor Vilasuso examined Edwards approximately six times during October, 1985 and continued seeing Edwards once or twice a week up to the date of trial in February, 1986. Doctor Vilasuso noted that Edwards had endured a difficult past and stated that he thought Edwards was "off the wall." Doctor Vilasuso testified that he had a "very, very strong suspicion" that Edwards suffered from "manic-depressive" illness during April, 1984. The government countered with the rebuttal testimony of Doctor Albert Jaslow, another psychiatrist. Doctor Jaslow concluded from Edwards' description of events that Edwards was not in "an active manic state" at the time of the robbery because Edwards' actions were reasonably well controlled and goal directed.

■ The testimony at issue concerns Doctor Jaslow's analysis of Edwards' frustration with his financial problems at the time of the robbery:

Q [by Prosecutor]:
  What sort of things were going on that would have depressed him?

A [by Doctor Jaslow]:
  His inability to come to grips with his financial problems; inability to handle the relationship with the I.R.S., who were after him and who were not permitting him to, according to him, of course, to settle down sufficiently so he could gain enough monies to take care of the financial problems and so on. These were bothering him tremendously, of course.

Q: Were these feelings understandable, in your opinion?

Defense Counsel: Objection. It's improper. That's not a proper question for a doctor.

The Court: Overruled.

A: Under the circumstances of the responsibilities, the problems that he had, it was quite understandable. He would be disturbed; it was quite understandable he would be upset. It's quite understandable he would be frantically trying to find ways to modify his situation so he could get on with his life.[2]

Edwards contends that the trial court erred in allowing this testimony because it contained a psychiatrist's opinion concerning his sanity, the ultimate issue at trial. We disagree.

"In resolving the complex issue of criminal responsibility, it is of critical importance that the defendant's entire relevant symptomatology be brought before the jury and explained." *Gordon v. United States,* 438 F.2d 858, 883 (5th Cir.) *cert. denied,* 404 U.S. 828, 92 S.Ct. 142, 30 L.Ed.2d 56 (1971). It has long been the position of our court that this is the only way a jury may become sufficiently informed so as to make a determination of a defendant's legal sanity. *See, e.g., United States v. Alexander,* 805 F.2d 1458, 1462–64 (11th Cir.1986); *Boykins v. Wainwright,* 737 F.2d 1539, 1544–45 (11th Cir. 1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1725, 84 L.Ed.2d 834 (1985); *Blake v. United States,* 407 F.2d 908, 911 (5th Cir.1969)

---

**2.** Edwards also contends that additional statements by Doctor Jaslow were irrelevant and thus inadmissible. *See* Fed.R.Evid. 401 & 402. Specifically, Edwards points to Doctor Jaslow's testimony that Edwards expressed sorrow for his crime and understood his legal predicament.

This challenge is groundless. Edwards' present ability to feel remorse and understand the consequences of his actions has the tendency to make it more probable that Edwards possessed the capacity to "appreciate the wrongfulness of his conduct" at the time of the robbery.

(en banc). This was also the attitude of Congress when it passed Rule 704(b):

> Psychiatrists, of course, must be permitted to testify fully about the defendant's diagnosis, mental state and motivation (in clinical and commonsense terms) at the time of the alleged act so as to permit the jury or judge to reach the ultimate conclusion about which they and only they are expert.

S.Rep. No. 225, 98th Cong., 1st Sess. 231 (quoting American Psychiatric Association Statement on the Insanity Defense, Dec. 1982, at 18–19), *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3413.

■ Congress did not enact Rule 704(b) so as to limit the flow of diagnostic and clinical information. Every actual fact concerning the defendant's mental condition is still as admissible after the enactment of Rule 704(b) as it was before. *See United States v. Mest*, 789 F.2d 1069, 1071–72 (4th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 163, 93 L.Ed.2d 102 (1986). Rather, the Rule "changes the style of question and answer that can be used to establish both the offense and the defense thereto." *Id.* at 1071. The prohibition is directed at a narrowly and precisely defined evil:

> When, however, "ultimate issue" questions are formulated by the law and put to the expert witness who must then say "yea" or "nay," then the expert witness is required to make a leap in logic. He no longer addresses himself to medical concepts but instead must infer or intuit what is in fact unspeakable, namely, the probable relationship between medical concepts and legal or moral constructs such as free will. These impermissible leaps in logic made by expert witnesses confuse the jury.

S.Rep. No. 225, 98th Cong., 1st Sess. 231 (quoting American Psychiatric Association

Statement on the Insanity Defense, Dec. 1982, at 18), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3412–13. Accordingly, Rule 704(b) forbids only "conclusions as to the ultimate legal issue to be found by the trier of fact." *Id.* at 3412. *See, e.g., United States v. Hillsberg*, 812 F.2d 328, 331 (7th Cir.1987) (expert cannot state opinion as to whether defendant had the capacity to conform his conduct to the law); *United States v. Buchbinder*, 796 F.2d 910, 917 (7th Cir.1986) (expert could not testify as to whether defendant had the requisite mental state to defraud, but could testify as to the extent of defendant's depression over son's death).

■ The ultimate legal issue at Edwards' trial was whether Edwards "lack[ed] substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Blake v. United States*, 407 F.2d 908, 916 (5th Cir.1969) (en banc).[3] In fact, the challenged statements offer no conclusions at all about Edwards. Doctor Jaslow was simply observing that people who are not insane can nevertheless become frantic over a financial crisis.

■ The prosecution placed Doctor Jaslow on the stand to dispute Doctor Vilasuso's diagnosis. Using a common sense generalization, Doctor Jaslow explained why the defendant's behavior—his frantic efforts to pay bills, his manifestations of energy, his lack of sleep, and his feelings of depression—did not necessarily indicate an active manic state. We think that the doctor played exactly the kind of role which Congress contemplated for the expert witness:

> [I]t is clear that the psychiatrist's first obligation and expertise in the courtroom is to "do psychiatry," i.e., to present

---

**3.** Congress recast this standard in the "Insanity Defense Reform Act of 1984." All parties agree that application of the new 18 U.S.C. § 20 would violate the *ex post facto* prohibition because the robbery occurred before the Act's October, 1984 effective date.

Nevertheless, Edwards argues that the district court erred in refusing to use the special verdict forms provided for in 18 U.S.C. § 4242(b), and in refusing to instruct the jury that involuntary

commitment was possible under 18 U.S.C. § 4243. We disagree. The legislative history of the Insanity Defense Reform Act demonstrates an intent that these procedures should apply only when an individual is found insane under the new statutory standard. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 238–245, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3420–3427.

medical information and opinion about the defendant's mental state and motivation and to explain in detail the reason for his medical-psychiatric conclusions. S.Rep. No. 225, 98th Cong., 1st Sess. 231 (quoting American Psychiatric Association Statement on the Insanity Defense, Dec. 1982, at 18), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3413. We conclude that the district court committed no error in permitting this testimony.

AFFIRMED.