Sam SEXTON, Jr., Plaintiff,

v.

ARKANSAS SUPREME COURT COM-
MITTEE ON PROFESSIONAL
CONDUCT, Defendant.

Civ. No. 89–2226.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Jan. 18, 1990.

Sam Sexton, III, Fort Smith, Ark., for plaintiff.

R.B. Friedlander, Sol. Gen., Little Rock, Ark., for defendant.

MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD,
District Judge.

I.

In 1989, plaintiff, a member of the Arkansas Bar, was suspended from the Bar for one year by defendant, a committee appointed by the Arkansas Supreme Court to regulate legal ethics. Defendant suspended plaintiff on the basis that his 1983 business transactions with one of his clients violated Disciplinary Rule 5–104 ("DR 5–104"), one of the state Bar's conflict of interest rules. *See Sexton v. Arkansas Supreme Court Committee on Professional Conduct*, 299 Ark. 439, 774 S.W.2d 114 (1989) (discussion of underlying facts); *see also* DR 5–104(A) (prohibiting lawyer from engaging in business transactions with client where they have differing interests, client expects lawyer to exercise his professional judgment for the protection of the client, and no "full disclosure" has occurred).

The Supreme Court of Arkansas affirmed defendant's decision. *See Sexton, supra.* Defendant informed the news media that the suspension was effective immediately (Complaint, para. 15) and ordered plaintiff to notify all his clients of the sus-

pension (Complaint, para. 16) (Complaint, Exh. 4), without discriminating between plaintiff's state and federal clients. Plaintiff has appealed the Arkansas Supreme Court's decision to the Supreme Court of the United States, and the Arkansas Supreme Court has stayed its judgment pending the appeal.

Plaintiff also filed the instant action under 42 U.S.C. § 1983, alleging that his suspension violated due process. Count 1 of the complaint requests an injunction against defendant attempting to suspend plaintiff's license to practice in federal court. Count 2 of the complaint requests an injunction against defendant suspending plaintiff's license to practice in state court.[1]

At a trial held on December 14, 1989, this court entered judgment for plaintiff as to count 1, and took count 2 under advisement. As to count 2, the court requested briefs as to two questions: (1) whether defendant unconstitutionally failed to notify plaintiff that it planned to consider prior disciplinary actions in its decision; and (2) whether application of changes in defendant's rules between 1983 (the year of plaintiff's alleged misconduct) and 1989 (the year of his suspension) violated due process. For the reasons stated below, the court will enter judgment for the defendant.

## II.

■■■ An attorney in disciplinary hearings is "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968). It follows from this that if defendant considered prior disciplinary action against plaintiff in its decision, it should have notified plaintiff that such misconduct would be considered. Thus, the question presented is whether, as a factual matter, plaintiff received such notice.

1. Plaintiff also argued that the relevant ethics rules were facially unconstitutional. This argument was rejected at trial.

2. Mr. Gaines was counsel for defendant, and Mr. Price was counsel for plaintiff.

The transcript of defendant's suspension hearing includes the following colloquy:

"MR. GAINES: Before I call my first witness I have one more exhibit that I would like to offer for the purposes of identification, an affidavit prepared by me where disciplinary action has been taken against Mr. Sexton previously by the Committee, and I would ask that it be received as evidence and considered by the Committee *only if the Committee determines the code has been violated* and only for the purposes of determining that. (Emphasis added).

CHAIRMAN GIBSON: Mr. Price?

MR. PRICE: [2] Well, that bothers me, and yes, I do have objection to it. This is the thing we've been fussing about the from the word 'go' on a preconceived idea. Whatever the document is, and the charges he's referring to to (sic) the Committee already that's going to hear this thing in an unbiased fashion, that there are charges out here, if you find him guilty of this one I'm going to throw these others in to let you look at them. And that's the very thing that we've been fussing about, that you don't have the right to infect your decision before you hear the evidence.

CHAIRMAN GIBSON: I will sustain the objection to the introduction of the affidavit. At this point it will be marked for identification as Exhibit 15 and will be so referred to, and it will not be introduced into evidence at this time.

(quoted in DB 4–5).[3]

At the end of the suspension hearing, defendant stated:

MR. GIBSON: We'll be back in session. The Arkansas Supreme Court Committee on Professional Conduct has considered the case of—under docket number 87–011, attorney Sam Sexton/Dan Haffelder, the Complainant. The Committee has considered the proof presented to us in this record, the arguments of Respon-

3. DB = Defendant's Brief
PB = Plaintiff's Supplemental Brief

dent, and found from a preponderance of the evidence a violation of DR–104(A) (sic). *After* reaching that decision, the Committee considered past *actions of the Committee* with respect to Mr. Sexton in cases other than this one. The Committee has voted to impose the sanction of suspension for one year ... (Emphasis added).

(quoted in DB 5–6).

The court believes that a fair construction of this exchange is that plaintiff's counsel was objecting to the defendant considering past offenses by the plaintiff before a decision was reached on the charge actually under consideration. At no time did he object to the use of such information after a decision was reached on the matter pending before the defendant. Indeed, it is implicit in plaintiff's objection that he knew that past offenses would be considered in the event the defendant found that plaintiff had violated DR 5–104. Mr. Gibson's ruling, in favor of the plaintiff's objection, that evidence of past violations would not be allowed "at this time" is pregnant with an assertion that it would be considered at a later time. All lawyers know, anyway, or are charged with the knowledge, that past transgressions are relevant to a determination of a proper punishment for a later offense. For example, prior criminal history is an important criterion in fixing punishment under the present sentencing guidelines. Indeed, common sense points to an identical conclusion.

The court is somewhat troubled by the fact that the record does not seem to reveal that Mr. Sexton was given written or oral notice of what prior offenses were going to be used in fixing his punishment. The record, however, reveals what they were; and during the hearing in this case Mr. Sexton enumerated his past offenses: His enumeration and the defendant's list of relevant past transgressions were identical. We think that due process requires that plaintiff be given notice of facts that the prosecutor believes are relevant to fixing punishment, so that he may offer proof that those facts are untrue; here, however, any error associated with fixing punishment is rendered harmless by the fact that Mr. Sexton would not have had any such proof to offer since the facts considered by the defendant, by Mr. Sexton's own admission, were true.

The court therefore finds no violation of plaintiff's Fourteenth Amendment rights in this respect.

### III.

■ Plaintiff further argues that by retroactively applying the procedural rules presently in effect, defendant violated due process. These rules, unlike those effective at the time of plaintiff's alleged violations, allegedly deny lawyers the right to discovery and the right to application of the rules of evidence. The parties agree that just as the Ex Post Facto clause bars retroactive application of criminal laws, "an analogous doctrine of retroactive application is applied to civil matters." (DB 7). *See also Weaver v. Graham*, 450 U.S. 24, 29–30, n. 13, 101 S.Ct. 960, 964–965, n. 13, 67 L.Ed.2d 17 (1981) (court refers in passing to restrictions on "retrospective laws in civil context"); *cf. Ex Parte Garland*, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866) (Ex Post Facto clause itself barred retroactive application of loyalty oath requirement for bar admission). This doctrine, however, applies only if defendant has altered "a substantial right" rather than one which is "merely procedural ...", *Weaver*, 450 U.S. at 29 n. 13, 101 S.Ct. at 964 n. 13. Thus, the question presented is whether the right to application of the rules of evidence and the right to discovery are "substantial."

Plaintiff relies on the well established rule that "[e]very law which alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense ..." is unconstitutional. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (Ex Post Facto clause inapplicable to non-penal matters). *See also United States v. Williams*, 475 F.2d 355, 356–57 (D.C.Cir.1973) (where burden of proof shifted retroactively, Ex Post Facto clause violated); *United States v. Henson*, 486 F.2d 1292, 1304–07 (D.C.Cir.1973) (prohibiting

retroactive application of statute which required admission of evidence of prior convictions for impeachment purposes). Plaintiff reasons from the cases cited above that "the [retroactive] change of rules of evidence has [generally] been held to be unconstitutional." (DB 4).

In fact, the courts have often been willing to apply evidentiary rules retroactively. For instance, in *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898), the trial court retroactively applied a law which allowed "comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine ... [so that such writings] may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute." *Id.* at 381, 18 S.Ct. at 922. The Supreme Court held that retroactive application of this law was constitutional, because it "does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible ... at the time the offense was committed." *Id.* at 387, 18 S.Ct. at 924.

More recently, several courts have upheld the retroactive application of a 1984 amendment to Rule 704 of the Federal Rules of Evidence. This amendment provided that no expert witnesses testifying with respect to the sanity of a criminal defendant could state an opinion as to the defendant's sanity. The Eighth Circuit, and several other circuits, have held that the statute could be applied retroactively "because it represented a procedural, as opposed to substantive, change in the applicable law." *U.S. v. Bartlett*, 856 F.2d 1071, 1077 n. 7 (8th Cir.1988); *see also United States v. Mest*, 789 F.2d 1069, 1072–73 (4th Cir.), *cert. denied*, 479 U.S. 846, 107 S.Ct. 163, 93 L.Ed.2d 102 (1986); *United States v. Prickett*, 790 F.2d 35, 37 (6th Cir.1986); *United States v. Alexander*, 805 F.2d 1458, 1461–62 (11th Cir.1986).

The most well reasoned of these opinions, the Fourth Circuit's opinion in *Mest*, interpreted the above-mentioned quote from *Calder* to mean that a retroactive application of evidentiary rules is unconstitutional only if it both alters the rules of evidence *and* requires "less or different testimony in order to convict the offender ...." *Mest*, 789 F.2d at 1071. The court held that the amendment at issue merely changed "the style of question and answer ...", *id.*, by prohibiting experts from testifying as to legal conclusions. *See also Prickett*, 790 F.2d at 37 (Rule 704 could be applied retroactively because it does not affect defendant's crimes, his punishment, or "the quantity or degree of proof necessary to establish his guilt.") Both *Prickett* and *Mest* were relied on by the Eighth Circuit in *Bartlett*.

In sum, those cases which directly address changes in the Federal Rules of Evidence, including the only relevant Eighth Circuit case, hold that a change in the rules of evidence may be retroactively applied if it does not require less or different proof to impose penalties upon the plaintiff. *Cf. Murphy v. Sowders*, 801 F.2d 205, 209 (6th Cir.1986) (statute may be retroactively applied if it does not "(1) attach criminality to any act previously committed; (2) aggravate any crime theretofore committed; (3) provide greater punishment than was prescribed at the time of the commission of the crime; or (4) alter the degree or lessen the amount or measure of the proof necessary to sustain a conviction ...") (allowing retroactive application of law broadening admissibility of testimony by accomplices).

In this case, it is simply impossible to tell how defendant's alleged failure to apply the rules of evidence affected plaintiff's hearing before the defendant. Plaintiff does not specify which evidentiary rules could or should have been applied to this case, nor does he specify how defendant's failure to apply such rules required "less or different testimony" to suspend plaintiff. Accordingly, the court finds that plaintiff has failed to show that defendant's failure to apply the rules of evidence violated his "substantial rights."

Although no cases have addressed the question of whether the government may retroactively bar application of the rules of civil procedure or the discovery rules therein, the court finds that *Bartlett* and similar cases are applicable by analogy. Again,

plaintiff has simply failed to demonstrate how defendant's conduct changed the degree of proof necessary to support his suspension. Indeed, it seems hard to believe that further discovery would have changed defendant's decision, as the basic facts of this case are certainly well known.

The court accordingly finds that plaintiff has not carried his burden of proving that his substantial rights were violated, and will enter judgment for defendant.[4]

Bruce A. Nemer, Peterson, Wicks, Nemer & Kamrath, P.A., and Morry N. Rothstein, Minneapolis, Minn., for plaintiff.

Eugene M. Warlich, Doherty, Rumble & Butler, P.A., St. Paul, Minn., and Albert E. Strasser and James D. Liles, Frost & Jacobs, Cincinnati, Ohio, for defendant.

---

4. Defendant also contends that "rules of evidence were followed as revealed by the transcript ..." (DB 9) (Transcript at 20). The transcript portions cited by defendant reveal that defendant did in fact make evidentiary rulings. It is not clear, however, whether they were following the same rules of evidence that an Arkansas state court would follow. Accordingly, the court declines to adopt defendant's contention that defendant in fact applied the rules of evidence.