## THOMPSON v. MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 628. Submitted April 21, 1898. — Decided May 31, 1898.

The act of the legislature of Missouri of April 8, 1895, Missouri Laws 1895, page 284, providing that "comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute," is not *ex post facto*, under the Constitution of the United States, when applied to prosecutions for crimes committed prior to its passage.

THE case is stated in the opinion.

*Mr. Charles F. Joy* and *Mr. Marion C. Early* for plaintiff in error.

*Mr. Edward C. Crow* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The record suggests many questions of law, but the only one that may be considered by this court is whether the proceedings against the plaintiff in error were consistent with the provision in the Constitution of the United States forbidding the States from passing *ex post facto* laws.

Thompson was indicted in the St. Louis Criminal Court at its November term 1894 for the murder, in the first degree, of one Joseph M. Cunningham, a sexton at one of the churches in the city of St. Louis. Having been tried and convicted of the offence charged, he prosecuted an appeal to the Supreme Court of Missouri, and by that court the judgment was reversed and a new trial was ordered. *State* v. *Thompson*, 132 Missouri, 301. At the second trial the accused was again convicted; and a new trial having been denied, he prosecuted another appeal to the Supreme Court of the State. That court affirmed the last judgment, and the present appeal

brings that judgment before us for reëxamination. *State* v. *Thompson*, 42 S. W. Rep. (Missouri) 949.

The evidence against the accused was entirely circumstantial in its nature. One of the issues of fact was as to the authorship of a certain prescription for strychnine, and of a certain letter addressed to the organist of the church containing threatening language about the sexton. The theory of the prosecution was that the accused had obtained the strychnine specified in the prescription and put it into food that he delivered or caused to be delivered to the deceased with intent to destroy his life. The accused denied that he wrote either the prescription or the letter to the organist, or that he had any connection with either of those writings. At the first trial certain letters written by him to his wife were admitted in evidence for the purpose of comparing them with the writing in the prescription and with the letter to the organist. The Supreme Court of the State, upon the first appeal, held that it was error to admit in evidence for purposes of comparison the letters written by Thompson to his wife, and for that error the first judgment was reversed and a new trial ordered. 132 Missouri, 301, 324.

Subsequently, the general assembly of Missouri passed an act which became operative in July, 1895, providing that "comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute." Laws Missouri, April 8, 1895, p. 284.

This statute is in the very words of section 27 of the English Common Law Procedure Act of 1854, 17 & 18 Vict. c. 125. And by the 28 Vict. c. 18, §§ 1, 8, the provisions of that act were extended to criminal cases.

At the second trial, which occurred in 1896, the letters written by the accused to his wife were again admitted in evidence, over his objection, for the purpose of comparing them with the order for strychnine and the letter to the

organist. This action of the trial court was based upon the above statute of 1895.

The contention of the accused is that as the letters to his wife were not, *at the time of the commission of the alleged offence*, admissible in evidence for the purpose of comparing them with other writings charged to be in his handwriting, the subsequent statute of Missouri changing this rule of evidence was *ex post facto* when applied to his case.

It is not to be denied that the position of the accused finds apparent support in the general language used in some opinions.

Mr. Justice Chase, in his classification of *ex post facto* laws in *Calder* v. *Bull,* 3 Dall. 386, 390, includes "every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offence in order to convict the offender."

In *Kring* v. *Missouri,* 107 U. S. 221, 228, 232, 235, the question arose as to the validity of a statute of Missouri under which the accused was found guilty of the crime of murder in the first degree and sentenced to be hung. That case was tried several times, and was three times in the Supreme Court of the State. At the trial immediately preceding the last one Kring was allowed to plead guilty of murder in the second degree. The plea was accepted, and he was sentenced to imprisonment in the penitentiary for the term of twenty-five years. Having understood that, upon this plea, he was to be sentenced to imprisonment for only ten years, he prosecuted an appeal, which resulted in a reversal of the judgment. At the last trial the court set aside the plea of guilty of murder in the second degree — the accused having refused to withdraw it — and, against his objection, ordered a plea of not guilty to be entered in his behalf. Under the latter plea he was tried, convicted and sentenced to be hanged. By the law of Missouri at the time of the commission of Kring's offence, his conviction and sentence under the plea of guilty of murder in the second degree was an absolute acquittal of the charge of murder in the first degree. But that law having been changed before the final trial occurred, Kring contended that the last

statute, if applied to his case, would be within the prohibition of *ex post facto* laws. And that view was sustained by this court, four of its members dissenting.

In the opinion of the court in *Kring's case* reference was made to the opinion of Mr. Justice Chase in *Calder* v. *Bull*, and also to the charge of the court to the jury in *United States* v. *Hall*, 2 Wash. C. C. 366, 373. In the latter case Mr. Justice Washington said: "An *ex post facto* law is one which, in its operation, makes that criminal or penal which was not so at the time the action was performed; or which increases the punishment; or, in short, which, in relation to the offence or its consequences, alters the situation of a party to his disadvantage." He added: "If the enforcing law applies to this case, there can be no doubt that, so far as it takes away or impairs the defence which the law had provided the defendant at the time when the condition of this bond became forfeited, it is *ex post facto* and inoperative." Considering the suggestion that the Missouri statute under which Kring was convicted only regulated procedure, Mr. Justice Miller, speaking for this court, said: "Can any substantial right which the law gave the defendant at the time to which his guilt relates be taken away from him by *ex post facto* legislation, because, in the use of a modern phrase, it is called the law of procedure? We think it cannot." In conclusion it was said: "Tested by these criteria, the provision of the constitution of Missouri which denies to plaintiff in error the benefit which the previous law gave him of acquittal of the charge of murder in the first degree on conviction of murder in the second degree, is, as to his case, an *ex post facto* law within the meaning of the Constitution of the United States."

A careful examination of the opinion in *Kring* v. *Missouri* shows that the judgment in that case proceeded on the ground that the change in the law of Missouri as to the effect of a conviction of murder in the second degree — the accused being charged with murder in the first degree — was not simply a change in procedure, but such an alteration of the previous law as took from the accused, after conviction of murder in the second degree, that protection against punishment for

murder in the first degree which was given him at the time of the commission of the offence. The right to such protection was deemed a substantial one — indeed, it constituted a complete *defence* against the charge of murder in the first degree — that could not be taken from the accused by subsequent legislation. This is clear from the statement in *Kring's case* that the question before the court was whether the statute of Missouri deprived "the defendant of any right of *defence* which the law gave him when the act was committed so that as to that offence it is *ex post facto.*"

This general subject was considered in *Hopt* v. *Utah*, 110 U. S. 574, 588, 589. Hopt was indicted, tried and convicted of murder in the Territory of Utah, the punishment therefor being death. At the time of the commission of the offence it was the law of Utah that no person convicted of a felony could be a witness in a criminal case. After the date of the alleged offence, and prior to the trial of the case, an act was passed removing the disqualification as witnesses of persons who had been convicted of felonies. And the point was made that the statute, in its application to *Hopt's case*, was *ex post facto.*

This court said: "The provision of the Constitution which prohibits the States from passing *ex post facto* laws was examined in *Kring* v. *Missouri*, 107 U. S. 221. The whole subject was there fully and carefully considered. The court, in view of the adjudged cases, as well as upon principle, held that a provision of the constitution of Missouri denying to the prisoner, charged with murder in the first degree, the benefit of the law as it was at the commission of the offence — under which a conviction of murder in the second degree was an acquittal of murder in the first degree, even though such judgment of conviction was subsequently reversed — was in conflict with the Constitution of the United States. That decision proceeded upon the ground that the state constitution deprived the accused of a substantial right which the law gave him when the offence was committed, and therefore, in its application to that offence and its consequences, altered the situation of the party to his disadvantage. By the law as

established when the offence was committed, Kring could not have been punished with death after his conviction of murder in the second degree, whereas, by the abrogation of that law by the constitutional provision subsequently adopted, he could thereafter be tried and convicted of murder in the first degree, and subjected to the punishment of death. Thus the judgment of conviction of murder in the second degree was deprived of all force as evidence to establish his absolute immunity thereafter from punishment for murder in the first degree. This was held to be the deprivation of a substantial right which the accused had at the time the alleged offence was committed. But there are no such features in the case before us. Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed." The court added: " The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute. Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be obnoxious to the constitutional inhibition upon *ex post facto* laws. But alterations which do not increase the punishment, nor change the ingredients of the offence, or the ultimate facts necessary to establish guilt, but — leaving untouched the nature of the crime and the amount or degree of proof essential to conviction — only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and

which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged."

At the present term, in *Thompson* v. *Utah*, 170 U. S. 343, this court observed, generally, that a statute is *ex post facto* which, by its necessary operation and in its relation to the offence or its consequences, alters the situation of the accused to his disadvantage. But it took care to add: " Of course, a statute is not of that class unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offence was committed. And, therefore, it is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offence charged against him. Cooley in his Treatise on Constitutional Limitations, after referring to some of the adjudged cases relating to *ex post facto* laws, says : ' But so far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts in existence when its facts arose. The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime.' " c. 9, p. *272.

Applying the principles announced in former cases — without attaching undue weight to general expressions in them that go beyond the questions necessary to be determined — we adjudge that the statute of Missouri relating to the com-

parison of writings is not *ex post facto* when applied to prosecutions for crimes committed prior to its passage. If persons excluded, upon grounds of·public policy, at the time of the commission of an offence, from testifying as witnesses for or against the accused, may, in virtue of a statute, become com-. petent to testify, we cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offence was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offence criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offence. Nor·can the new rule introduced by it be characterized as unreasonable — certainly not so unreasonable as materially to affect the substantial rights of one put on trial for crime. The statute did not require "less proof, in amount or degree," than was required at the time of the commission of the crime charged upon him. It left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible, and did not disturb the fundamental rule that the State, as a condition of its right to take the life of an accused, must overcome the presumption of his innocence and establish his guilt beyond a reasonable doubt. Whether he wrote the prescription for strychnine, or the threatening letter to the church organist, was left for the jury, and the duty of the jury, in that particular, was the same after as before the passage of the statute. The statute did nothing more than remove an obstacle arising out of a rule of evidence that withdrew from the consideration of the jury testimony which, in the opinion of the legislature, tended to elucidate the ultimate, essential fact to be established, namely, the guilt of the accused. Nor did it give the prosecution any right that was denied to the accused. It placed the State and the accused upon an equality; for the rule established by it gave

to each side the right to have disputed writings compared with writings proved to the satisfaction of the judge to be genuine. Each side was entitled to go to the jury upon the question of the genuineness of the writing upon which the prosecution relied to establish the guilt of the accused. It is well known that the adjudged cases have not been in harmony touching the rule relating to the comparison of handwritings: and the object of the legislature, as we may assume, was to give the jury all the light that could be thrown upon an issue of that character. We cannot adjudge that the accused had any vested right in the rule of evidence which obtained prior to the passage of the Missouri statute, nor that the rule established by that statute entrenched upon any of the essential rights belonging to one put on trial for a public offence.

Of course, we are not to be understood as holding that there may not be such a statutory alteration of the fundamental rules in criminal trials as might bring the statute in conflict with the *ex post facto* clause of the Constitution. If, for instance, the statute had taken from the jury the right to determine the sufficiency or effect of the evidence which it made admissible, a different question would have been presented. We mean now only to adjudge that the statute is to be regarded as one merely regulating procedure and may be applied to crimes committed prior to its passage without impairing the substantial guarantees of life and liberty that are secured to an accused by the supreme law of the land.

The judgment of the Supreme Court of Missouri is

*Affirmed.*