THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
PATRICK HUDY, Appellant.

Third Department, November 25, 1987

## APPEARANCES OF COUNSEL

*Aswad & Ingraham (Thomas A. Saitta* of counsel), for appellant.

*Patrick T. Mathews, District Attorney (Kevin P. Dooley* of counsel), for respondent.

## OPINION OF THE COURT

KANE, J. P.

During the relevant time period, defendant was a corrective math teacher at Glenwood Elementary School (hereinafter Glenwood) in the Town of Vestal, Broome County, where he had been teaching since 1976. Students who, as the result of testing, were determined to be in need of extra help were placed in defendant's class. These students attended defendant's class three times a week for a 30-minute session.

After an investigation concerning allegations of sexual abuse upon his male students, defendant was indicted and charged with 23 counts of sexual abuse in the first degree and

9 counts of endangering the welfare of a child. After pretrial motions, County Court granted defendant's motion to dismiss some of the counts. Defendant was thereafter tried on the remaining 25 counts: 16 counts of sexual abuse in the first degree and nine counts of endangering the welfare of a child, involving alleged incidents with eight boys. These boys, between the ages of 10 and 12 by the time of trial, all testified that defendant had touched their private parts on one or more occasions in defendant's classroom. This touching generally occurred during class when each boy was at defendant's desk while defendant was in the process of correcting that particular child's math assignments. One of the children testified that he saw defendant on one occasion with his hand down the front of the pants of another student, who was at defendant's desk having an assignment corrected. The eight boys who testified as to being touched all stated that they did not promptly report defendant's conduct because they were either scared, embarrassed or unsure of what to do.

At the trial, the People also were permitted to present a child (hereinafter the witness) who testified that defendant had touched him in an improper manner after detaining him after school on about six occasions during the 1983-1984 school year. After the sixth time, the witness reported the touching or "tickling" to his grandmother who, in turn, told his mother. The witness's mother then wrote defendant a letter requesting him to stop touching her son, and she sent a copy of the letter to Glenwood's school psychologist. The witness later moved from Vestal to Pennsylvania in 1984. The acts underlying his testimony were not contained in any of the charges in the indictment against defendant.

The defense called 12 witnesses to the stand. These included character witnesses who testified as to defendant's reputation as having a good moral character; witnesses who testified to the fact that they had never seen defendant engage in the charged conduct; and a police officer whose testimony was offered to impeach the testimony of one of the alleged victims. In addition, defendant took the stand and denied the charges against him. The jury returned a verdict of guilty on all of the charged counts and, after sentencing, this appeal ensued.

Defendant contends that County Court committed reversible error in refusing to permit the defense to examine the investigating officers on their method of questioning the alleged victims. During the trial, defendant sought to call two investigating officers of the Vestal police to the stand to question

them about the method they had used in interviewing defendant's students. In his offer of proof, defense counsel stated that the testimony would be limited to asking the officers if they made certain statements to the children before the children made their allegations. In this regard, defendant was attempting to establish that the police suggested or coerced the accusation against defendant. Accordingly, the defense argued that the evidence was relevant to the credibility of the witnesses and should have been considered by the jury. County Court refused to allow the defense to call and question the officers as to the method in which the children were questioned, finding that the evidence concerned a collateral issue.

■ In the circumstances of this case, we find no error in County Court's ruling (see, Richardson, Evidence § 491, at 477-478 [Prince 10th ed]). In any event, the defense was able to adduce most of the evidence it sought through cross-examination of the children and County Court permitted defense counsel to question Officer Terry Kintner on the specific subject of his questioning of one of the victims (see, Di Paolo v Somma, 111 AD2d 899).

■ As noted above, County Court permitted the prosecution to call the witness, who testified that defendant touched him in an improper manner on about six occasions during the 1983-1984 school year. Since this conduct had not formed the basis of any of the charges contained in the indictment against him, defendant contends that County Court improperly admitted testimony of the witness concerning an uncharged crime (see, People v Crandall, 67 NY2d 111). In our opinion, the evidence was properly admitted to rebut the defense's theory that the allegations from the children at Glenwood were the result of a rumor that had snowballed. Since the witness had previously reported an incident, lived outside the area for two years, had had no contact with the students at Glenwood and was not present in October 1984 when the alleged rumor spread, such evidence was relevant to rebut defendant's claim that the charges against him were fabricated by the children at Glenwood. In our opinion, the probative value of this testimony outweighed any prejudice and consequently County Court properly admitted the evidence (see, People v Putnam, 130 AD2d 52, 55).

■ Defendant next contends that the prosecution failed to establish a prima facie case on certain counts because no evidence to corroborate the victims' testimony existed and the

retroactive application of the repeal of the pertinent corroboration requirement contained in Penal Law former § 130.16 (amended by L 1984, ch 89, § 1; *see,* Donnino, Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 130.16 [1987 Supp Pamph], at 521-522) violated the Ex Post Facto Clause of the US Constitution, article I, § 10. We reject this contention. As noted in *People v Spearman* (128 Misc 2d 112), the amendment to Penal Law § 130.16, removing the corroboration requirement, was not an ex post facto law since it did not punish as a crime an act which was not a crime when committed, increase the punishment for a crime after its commission or deprive defendant of any defense available accorded him at the time the act was committed. Moreover, no element of the crimes involved has been altered and each element of the crimes must still be proven beyond a reasonable doubt *(see,* Note, *Ex Post Facto Limitations on Changes in Evidentiary Law: Repeal of Accomplice Corroboration Requirements,* 55 Fordham L Rev 1191 [1987]).

▮ Defendant argues that County Court erred by permitting the jurors to view photographs of the victims to aid them in their deliberations. In this regard, during the trial, the prosecution offered into evidence photographs of each of the children who testified to facilitate the jury's deliberations. Over defendant's objection, County Court received the photographs for the limited purpose of helping the jury to distinguish the boys from one another. Defendant contends that these photographs should not have been admitted because they were irrelevant to any issue and were highly prejudicial to him because they allegedly aroused the emotions of the jury. We, however, find no error. The photographs cannot be considered prejudicial to defendant as the photographs in question were of the children in ordinary attire and poses *(see, People v Pobliner,* 32 NY2d 356, 369-370, *cert denied* 416 US 905). Further, County Court did not err by realistically addressing the fact that the jury could become confused about the identities of the witnesses, given that many boys of approximately the same age testified. Accordingly, the pictures were properly received for the limited purpose of elucidating the testimony of the numerous victims by refreshing the jury as to the identity of each.

We have examined defendant's remaining contentions and find them lacking in merit. The judgment should therefore be affirmed.

LEVINE, J. (dissenting in part and concurring in part). In my view, the convictions on counts Nos. 8, 9, 12, 14, 15, 17, 21, 22, 25, 26 and 28, for sexual abuse in the first degree, and counts Nos. 4, 11, 13, 16, 20 and 31, for endangering the welfare of a child in the first degree, should be reversed and those counts dismissed as violative of the prohibition against ex post facto laws (US Const, art I, § 10, cl 1; *see also,* US Const, art I, § 9, cl 3). As to each such count, the crime was committed before the effective date of the amendment to Penal Law § 130.16, which eliminated the corroboration requirement for the testimony of a victim of a sex offense for which lack of consent is due to the victim's young age (L 1984, ch 89). Despite the strong arguments made to the contrary by the majority here and in *People v Spearman* (128 Misc 2d 112), as well as the scholarly criticism of general application of the ex post facto prohibition to changes in the law of criminal evidence *(see,* Tribe, American Constitutional Law § 10-3, at 483-484; 1 Wigmore, Evidence § 7, at 462-475 [Tillers rev]), I read the case law, both State and Federal, to continue to apply the rule announced in *Calder v Bull* (3 Dallas [3 US] 386, 390) that the Ex Post Facto Clauses bar retroactive application of a statute that "alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender". The ex post facto prohibition cannot be avoided merely by classifying the change in rule as procedural, in that no element of the crime has been altered, no punishment increased and the standard of proof beyond a reasonable doubt unchanged. The United States Supreme Court continues to apply a more general test, whether the change is a significant "disadvantage [to] the offender affected by it" *(Weaver v Graham,* 450 US 24, 29; *see also, Beazell v Ohio,* 269 US 167, 170), or is "more onerous" than the prior law *(Dobbert v Florida,* 432 US 282, 293). "Alteration of a *substantial* right, however, is not merely procedural, even if the statute takes a seemingly procedural form" *(Weaver v Graham, supra,* at 29, n 12 [emphasis supplied]). Our Court of Appeals likewise continues to apply the prohibition in the evidence context: "Statutes that change the rules of evidence so as to require a lesser amount of evidence or evidence of different facts in order to convict are ex post facto" *(People v Nival,* 33 NY2d 391, 396, *appeal dismissed, cert denied* 417 US 903).

I find the conclusion inescapable that removal of the requirement of corroboration of a child sex offense victim's

testimony represents the kind of substantial change to the disadvantage of the rights of an accused that runs afoul of the Ex Post Facto Clause. On its face, Penal Law § 130.16 clearly reduces the quantum of evidence necessary to convict, and does so in a way that was intended to materially alter the previous balance between defense and prosecution in cases of sex offenses against children. As the Governor's approval message notes, under the previous law "too few cases against child sex offenders can be successfully prosecuted because of the requirement that the testimony of the victim be corroborated"; the bill was praised, *inter alia,* for "promoting more effective prosecution of these cases" (Executive Dept mem, 1984 McKinney's Session Laws of NY, at 3580). Functionally, I see little to distinguish between retroactive application of a statute which alters the standard of proof or eliminates or shifts the burden of proof on a defense, all of which have been held to run afoul of the Ex Post Facto Clauses, and the statute in question here. In each instance, the purpose and effect of the law is to change the rules significantly to the advantage of the prosecution and the detriment of the accused. As such, retrospective application violates two underlying purposes of the prohibition, i.e., to guard against potentially vindictive legislation *(Weaver v Graham,* 450 US 24, 29, *supra; Malloy v South Carolina,* 237 US 180, 183; Tribe, American Constitutional Law § 10.2, at 478) and to enforce the basic constitutional separation of power as to the criminal law, under which the Legislature is confined to penal decisions with prospective effect and may not interfere with the executive and judicial functions of prosecuting and punishing violations of existing law *(Weaver v Graham, supra,* at 29, n 10; *Prater v U. S. Parole Commn.,* 802 F2d 948, 953).

The prevailing view among most courts has been to treat retroactive abrogation of corroboration requirements as ex post facto *(see, Government of Virgin Is. v Civil,* 591 F2d 255; *Bowyer v United States,* 422 A2d 973 [DC]; *State v Byers,* 102 Idaho 159, 627 P2d 788; *State v Schreuder,* 726 P2d 1215 [Utah]; *see also, People v Dotson,* 72 Misc 2d 545), although a minority of courts have ruled otherwise *(see, Murphy v Sowders,* 801 F2d 205, *cert denied* — US —, 107 S Ct 1593; *Murphy v Commonwealth,* 652 SW2d 69 [Ky], *cert denied* 465 US 1072; *see also, People v Spearman, supra).* The latter decisions rely heavily upon two United States Supreme Court decisions considering the ex post facto effects of changes in certain evidentiary rules *(Thompson v Missouri,* 171 US 380

[rendering handwriting exemplars admissible for purposes of comparison with disputed handwritings]; *Hopt v Utah,* 110 US 574 [removal of witness disqualification of convicted felons]). *Hopt* and *Thompson,* however, are quite distinguishable in that the statutory changes therein considered were of general civil and criminal application and were neutral in purpose and over-all effect. As noted in *Thompson:* "Nor did [the statute] give the prosecution any right that was denied to the accused. It placed the State and the accused upon an equality; for the rule established by it gave to each side the right to have disputed writings compared with writings proved to the satisfaction of the judge to be genuine" *(Thompson v Missouri, supra,* at 387-388).

Accordingly, the convictions on those counts which relate to crimes committed before the effective date of Penal Law § 130.16 and, as conceded by the People, lack the necessary corroborative evidence should be reversed and the counts dismissed.

MIKOLL, J. (dissenting in part and concurring in part). I join in Justice Levine's dissent and concur that counts Nos. 8, 9, 12, 14, 15, 17, 21, 22, 25, 26 and 28, for sexual abuse in the first degree, and counts Nos. 4, 11, 13, 16, 20 and 31, for endangering the welfare of a child in the first degree, should be reversed and those counts dismissed as violative of the prohibition against ex post facto laws for the reasons articulated in his dissent.

I find also that a second issue merits consideration on this appeal. The record discloses that defense counsel requested leave to ask the investigating police officers as to the method employed in questioning the victims on whose statements the instant charges were based. Specifically, the defense stated that:

"one of the statements we wish to get into involved [one child] in which the police officer stated, after [the child] said that he didn't do it, I believe it was him sitting on [defendant's] lap and then, only after the police officers made that statement to him, that he had said it, in fact, occurred.

"Going through the police reports, there may be three or four or five other such incidents. Particularly one comes to mind in which the police officers told a child who said nothing had happened that they had four witnesses that said he was involved.

"Again, we would get into those types of statements with

the police officer. The testimony would be limited to, again, what we have a good-faith basis to know about in the police officer's own police reports, the testimony would merely be did you make such a statement to the child? Was this statement made to the child before he made an allegation that [defendant] had put his hand down his pants and touched his penis? And, in fact, did the child then say he did so after such statements were made."

The request was denied on the ground that the proposed testimony related to collateral issues. I disagree. The proffered testimony had a direct bearing on the victim's credibility, as it established a motive on their part to falsify their testimony. County Court therefore erred in applying the collateral matter rule to defense counsel's request (see, *People v Schwartzman*, 24 NY2d 241, 245-246, *cert denied* 396 US 846).

The fact that the defense was able to in part adduce some evidence as to the police method of inquiry, through cross-examination of one police officer as to the questioning of one of the victims, does not obviate the prejudice to defendant of County Court's erroneous ruling. Evidence of some of the victims' initial denials of defendant's misconduct is not the equivalent of unfolding and laying bare the total issue of the suggestiveness of police questioning. Defendant was attempting to develop a defense which would have explained how all of the victims came to make their allegations. It was defendant's theory that the victims were pressured by the police or that the police may have planted the accusations in their minds through the method of questioning. The inquiry was central to defendant's case and not collateral.

County Court thus denied defendant his fundamental right to present witnesses in his own defense (see, *Chambers v Mississippi*, 410 US 284, 302). Since defendant was denied the right to elicit testimony from the officers to establish his defense, reversible error occurred, mandating a new trial on those counts of the indictment not already dismissed (see, *People v Scott*, 104 AD2d 667 670).

MAIN and HARVEY, JJ., concur with KANE, J. P.; MIKOLL, J., concurs in part and dissents in part in an opinion; LEVINE, J., concurs in part and dissents in part in an opinion.

Judgment affirmed.