William Michael
TUMLINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–00604–CR.

Court of Appeals of Texas,
Dallas.

Aug. 1, 1988.

Kerry P. Fitzgerald, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before HOWELL, ROWE and BAKER, JJ.

BAKER, Justice.

William Michael Tumlinson was convicted of murder in June of 1982 and sentenced to 99 years' confinement. This Court reversed that conviction based on a violation of the then existing psychotherapist-patient privilege.[1] *See Tumlinson v. State*, 663 S.W.2d 539 (Tex.App.—Dallas 1983, pet. ref'd). On remand, appellant was again convicted and sentenced to forty years' confinement. Appellant assigns seven points of error resulting from his 1987 conviction, none of which we find meritorious. We affirm the conviction.

In our 1983 opinion, we recited the facts as follows:

The defendant, William Michael Tumlinson, a Staff Sergeant in the United States Air Force, was stationed at Plattsburg Air Force Base in New York. On March 30, 1982, while on leave in Dallas, Texas, Tumlinson went to the emergency room of the Air Force Regional Hospital at Carswell Air Force Base in Fort Worth, complaining that he was nervous, anxious, and had been contemplating suicide. Tumlinson was directed to Dr. Michael Murray, a psychologist licensed by the State of Texas, who was Chief of Psychological Services at the Air Force Regional Hospital. Tumlinson revealed to Dr. Murray his fears that he might have killed someone in Dallas. He described a vision of the face of Regina Gale Pruett, covered with blood and with a rope around her neck. Tumlinson explained that he had spent two or three days with Pruett during the last week and that he was afraid that he had killed her. Further, Tumlinson gave Dr. Murray the address and phone number of Regina Pruett and agreed orally for Dr. Murray to call the Dallas Police to inquire about any reports of injury to Regina Pruett. In his calls to the Dallas Police, Dr. Murray disclosed to them Tumlinson's identity and the details of his conversation with Tumlinson. Dr. Murray's calls prompted the Dallas Police investigation which led to the discovery of the body of Regina Pruett in her Dallas apartment. She had been strangled with a rope.

*Id.* at 541.

In his first point of error, appellant contends that the evidence is insufficient to support his conviction. In considering the sufficiency of the evidence, the standard of review is whether any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Chambers v. State*, 711 S.W.2d 240, 244–45 (Tex.Crim. App.1986). The evidence must be viewed in the light most favorable to the verdict. *Templin v. State*, 711 S.W.2d 30 (Tex.Crim. App.1986).

Dr. Murray testified that appellant entered his office at Carswell Air Force Base on March 30, 1982, and reported seeing a vision of Ms. Pruett's face covered with blood and a rope around her neck. Appellant told Dr. Murray that he and the victim were out together on a Saturday night and that they drank quite a bit of alcohol and smoked marijuana. Appellant said that he was drunk and couldn't remember very well what happened after that, but he said, "I really think I killed somebody." Dr. Murray suggested that they try to locate the victim by phone to allay appellant's fears. Dr. Murray called the victim's employer and found out that she had not reported to work for several

---

1. *See* Act of May 17, 1979, Ch. 239, 1979 Tex. Gen.Laws 512, *amended by* Act of June 19, 1983, Ch. 511, § 2(5), 1983, Tex.Gen.Laws 2970, 2973, *repealed by* Court of Criminal Appeals, order dated December 18, 1985, eff. September 1, 1986, adopting Texas Rules of Criminal Evidence.

days. He then called the Dallas Police, who searched the victim's apartment and confirmed that she had been murdered. When Dr. Murray informed appellant of this, he became very distressed and said, "Why? It's so brutal."

The police found the victim as appellant had described her, with a rope around her neck. The medical examiner testified that the victim had rope marks on her neck, had defensive wounds consistent with a struggle, and died from asphyxiation due to strangulation.

■ There was also physical evidence connecting appellant with the murder. Appellant's palm print was found on the inner doorknob of the victim's apartment. No latent prints other than the appellant's were detected. Further, there was evidence at trial that appellant fled from this prosecution before the first setting of his jury trial. He was eventually arrested in Colorado after the FBI had issued an "unlawful flight to avoid prosecution" warrant. Flight is a factor which may be construed as evidence of guilt. *Thompson v. State*, 652 S.W.2d 770 (Tex.Crim.App. 1983). All these facts, viewed cumulatively, are sufficient to permit any rational trier of fact to find the elements of the offense beyond a reasonable doubt. *See Carlsen v. State*, 654 S.W.2d 444, 447 (Tex. Crim.App.1983). Appellant's first point of error is overruled.

In points two and three, appellant complains that the trial court erred in allowing Dr. Murray's testimony. Appellant contends that his conversations with Dr. Murray were privileged at the time of his second trial, although the statutory psychotherapist-patient privilege had been repealed in the interval between his first and second trials. *See* TEX.REV.CIV.STAT. ANN. art. 5561h, § 4(a)(5) (Vernon's Supp. 1988).

In *Smith v. State*, 740 S.W.2d 503 (Tex. App.—Dallas 1987, pet. granted on other grounds), we held that the psychotherapist-patient privilege under art. 5561h was a procedural rule because it related to the admissibility of evidence. *See id.* at 512. In *Smith*, the appellant's first trial occurred at a date when the privilege was in effect. The Court of Criminal Appeals later reversed the conviction on other grounds and remanded for a new trial. *Smith v. State*, 703 S.W.2d 641 (Tex.Crim. App.1985). When the case was retried in May of 1986, the psychotherapist-patient privilege had been amended to permit the introduction of a psychotherapist's testimony regarding conversations with patients who were defendants in criminal prosecutions. Art. 5561h, § 4(a)(5). As a result, we held that the psychotherapist's testimony was admissible in the second trial. *Smith*, 740 S.W.2d at 503.

■ Appellant contends that permitting Dr. Murray to testify about their conversation would subject him to an ex post facto law inasmuch as art. 5561h, § 4(a)(5), altered the legal rules of evidence to permit a conviction on less testimony than the law required at the time of the offense. *See* U.S.Const. art. I, § 10; Texas Const. art. I, § 16. Appellant cites the following definition of an ex post facto law from the Court of Criminal Appeals:

> Every law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender.

*Hill v. State*, 146 Tex.Cr.R. 333, 171 S.W. 2d 880, 883 (1943). Appellant asserts that the State has attempted to use an altered legal rule of evidence in order to permit it to introduce different testimony than the law required at the time of the commission of the offense in order to convict him. We disagree.

Rule changes which do not deprive the accused of a substantial right which he enjoyed at the time of the offense pose no ex post facto problem. In *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898), the Missouri Supreme Court had reversed and remanded the defendant's murder conviction, holding that the trial court had erroneously admitted a letter he had written his wife for handwriting comparison purposes. In the interval between the court's ruling and the defendant's second trial, the Missouri legislature

enacted a law permitting an evidentiary comparison of disputed writings. At his second trial, the letter was introduced pursuant to the new law, and the defendant was again convicted of murder. *Id.* The United States Supreme Court held that the Missouri statute did not contravene the ex post facto clause. The Court said that:

> Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage, for they do not attach criminality to any act previously done, and which was innocent when done, nor aggravate any crime theretofore committed, nor provide a greater punishment therefor than was prescribed at the time of its commission, nor do they alter the degree or lessen the amounts or measure of the proof which was made necessary to conviction when the crime was committed.

*Id.* 18 S.Ct. at 924. The court went on to say that rule changes such as the Missouri statute "relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at its pleasure." *Id.; see also Hopt v. Utah,* 110 U.S. 574, 590–91, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884); *Hill v. State,* 171 S.W.2d at 883.

Amending the statutory mental health privilege in the interval between appellant's first and second trials resulted in no ex post facto violation. As we said in *Smith v. State,* the amendment effected a change in the evidentiary rules at trial which were procedural only. The psychotherapist-patient privilege in effect at the time of appellant's first trial did not vest him with any substantial legal rights. The amendment simply enlarged the class of witnesses eligible to testify at trial and therefore passes constitutional muster. Points number two and three are overruled.

In his fourth and fifth points of error, appellant contends that the trial court erred in excluding a tape recording of his hypnotically induced testimony, as well as the testimony of the hypnotist. Appellant claims violations of the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article 1, Section 10 of the Texas Constitution and Article 1.05 of the Texas Code of Criminal Procedure. Appellant cites *Rock v. Arkansas,* — U.S. ——, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). In that case, the Supreme Court held that Arkansas' per se rule excluding all hypnotically refreshed testimony infringed impermissibly on the defendant's right to testify in her own behalf. 107 S.Ct. at 2714. The Court said:

> A state's legitimate interest in barring unreliable evidence does not extend to per se exclusions that may be reliable in an individual case. Wholesale inadmissibility of the defendant's testimony is an arbitrary restriction on the right to testify in the absence of clear evidence by the State repudiating the validity of all posthypnosis recollections.

*Rock v. Arkansas* offers no constitutional comfort to appellant. The Court merely prohibited Arkansas from making hypnotically induced testimony per se inadmissible. Appellant cannot carry this narrow holding so far as to suggest any constitutional seal of approval for the admission of hypnotically induced testimony in all cases.

Since the date of oral argument in this case, the Texas Court of Criminal Appeals has handed down an opinion directly in point. *See Zani v. State,* 758 S.W.2d 233 (Tex.Crim.App.1988). In *Zani,* the Court of Criminal Appeals declined to adopt an exclusionary rule prohibiting the use of hypnotic recall in all cases. The court, however, further stated that the proponent of hypnotically refreshed testimony should bear a heavy burden. The court concluded that because of the uncertainties inherent in posthypnotic testimony, it is appropriate to require the proponent of such testimony to demonstrate to the trial court, outside the jury's presence, by clear and convincing evidence, that such testimony is trustworthy. In assessing trustworthiness, the trial court should be alert to the four-prong dangers of hypnosis: "hypersuggestibility," "loss of critical judgment," "confabu-

lation," and "memory cementing." *Zani v. State*, at 243.

The court then held that factors involved in determining trustworthiness of hypnotic recall include, but are not limited to,

the level of training in the clinical uses and forensic applications of hypnosis by the person performing the hypnosis; the hypnotist's independence from law enforcement investigators, prosecution, and defense; the existence of a record of any information given or known by thc hypnotist concerning the case prior to the hypnosis session; the existence of a written or recorded account of the facts as the hypnosis subject remembers them prior to undergoing hypnosis; the creation of recordings of all contacts between the hypnotist and the subject; the presence of persons other than the hypnotist and the subject during any phase of the hypnosis session, as well as the location of the session; the appropriateness of the induction and memory retrieval techniques used; the appropriateness of using hypnosis for the kind of memory loss involved; and the existence of any evidence to corroborate the hypnotically-enhanced testimony.

*Zani v. State*, at 243–44 (quoting *People v. Romero*, 745 P.2d 1003, 1007 (Colo. 1987) extensively).

■ The record shows that the hypnotist was not qualified as a psychologist or psychiatrist. The hypnotist was hired by defense counsel, who was present in the room with appellant and the hypnotist when the recording was made. No videotape was made of the session, only an audio recording. The record does not reflect the existence of any recording or record of information given or known by the hypnotist concerning the case prior to the session, nor does the record show whether there was a written or recorded account of the facts as the defendant remembered them prior to undergoing hypnosis.

When the facts are analyzed under the factors established in *Zani v. State*, it is apparent that the trial court acted within its discretion in excluding both the audiotape and the hypnotist's testimony. Appel-

lant's fourth and fifth points of error are overruled.

In his sixth point of error, appellant complains that the trial court erred in overruling his motion for mistrial after the medical examiner referred to the first trial during cross-examination. The record reflects the following:

Q: Could it have been there at the time that the rope was brought in on the body?

A: I am pushing it back down 'cause I only just touch it and looking at the rest of the rope. I suppose it is possible. It seems to be very loosely attached. When I moved my hands and turned the rope it didn't fall off in just that examination.

Q: Is it therefore—

A: I don't know whether it was there or not. I would be unable to say. We knew where the rope was prior to the trial, the first trial.

MR. LIVELY: Objection, your Honor.

THE COURT: Sustained.

Appellant's motion for mistrial was heard outside the jury's presence and overruled by the trial court. When the jury returned, it was instructed to disregard the witness' last response.

■ The trial court's prompt action in sustaining the objection and instructing the jury to disregard it cured any error. *See Seaton v. State*, 564 S.W.2d 721 (Tex.Crim. App.1978). A mistrial is required only if the erroneous question or testimony is clearly calculated to inflame the jurors' minds so as to suggest the impossibility of removing the impression produced. *Hooten v. State*, 689 S.W.2d 328 (Tex.App.— Fort Worth 1985, no pet.). The record here does not suggest such impossibility. Appellant's sixth point of error is overruled.

■ In his final point, appellant contends that the prosecutor reversibly erred when he improperly bolstered the credibility and reputation of appellant's previous court appointed attorney by mentioning that the attorney now sits as a Dallas County judge. Bolstering occurs when evidence is improperly used by a party to add credence or

weight to some earlier unimpeached item of evidence. *Pless v. State,* 576 S.W.2d 83, 84 (Tex.Crim.App.1978). The record reflects that, earlier, appellant had questioned his previous attorney's abilities. The State, however, never offered any testimony as to the attorney's handling of appellant's first trial. Thus, no bolstering occurred.

We overrule appellant's seventh point of error and affirm his conviction.