584 A.2d 265

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. DARRELL GADSDEN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 27, 1990—Decided December 26, 1990.

Before Judges BRODY and MICHELS.

*Wilfredo Caraballo,* Public Defender, attorney for appellant (*Steven A. Caruso,* Assistant Deputy Public Defender, of counsel and on the letter brief).

*Robert J. Del Tufo,* Attorney General, attorney for respondent (*Cherrie Madden Black,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Defendant contends in this appeal that a statute, enacted after he committed the CDS crime for which he has been convicted, was unconstitutionally used by the State to obtain the conviction. The statute relieves the State from having to present live testimony at trial to prove that a defendant was dealing in CDS on or within 1,000 feet of school property. It permits the State to use instead a map, prepared by a county or municipal engineer and authenticated by resolution or ordinance, that delineates the prohibited areas. Defendant contends that the statute was applied against him *ex post facto* in violation of the federal and state constitutions. *U.S. Const.* art. I, § 10, cl.1; *N.J. Const. of 1947* art. IV, § 7, para. 3. We disagree and affirm the conviction.

Following a jury trial, defendant was convicted of third-degree unlawful possession of cocaine with intent to distribute, a violation of *N.J.S.A.* 2C:35–5a(1). Because he committed the crime within 1,000 feet of a school, his conduct also constituted a separate third-degree crime carrying a mandatory prison term of at least three years without parole. *N.J.S.A.* 2C:35–7.

Judge Sacher imposed concurrent three-year prison terms, the sentence for unlawfully possessing the cocaine near a school to be served without parole.

██ The State presented evidence that police officers saw defendant about to hand something to a man who had just given him cash. The transaction was interrupted when the men saw the officers and ran away. The officers caught defendant after he had thrown something on the roof of a nearby building. Firemen climbed to the roof where they found six vials of cocaine held together by a rubber band. Each vial had a street value of $20. Defendant had $40 in his possession when he was arrested. A state witness testified that in these circumstances a package of six $20 vials of cocaine would probably be possessed for sale and not for consumption.

Defendant testified that he did not intend to distribute the vials of cocaine, but had purchased them for his own consumption. He explained that he ran from the police because he knew that mere possession of cocaine was a crime. We reject as clearly without merit defendant's argument that the evidence did not support the convictions. *R.* 2:11–3(e)(2).

██ Witnesses who knew the neighborhood testified that the place where defendant possessed the cocaine with intent to distribute was directly across the street from a school. The State supplemented this evidence with a map, prepared by the municipal engineer and approved by ordinance, that showed the place to be well within 1,000 feet of the school. Judge Sacher properly received the map into evidence and instructed the jury that it constituted prima facie evidence of the location of the prohibited area. Defendant objected that use of the map against him was an unconstitutional use of an *ex post facto* law.

The following portion of *N.J.S.A.* 2C:35–7 authorizes the use of such a map as evidence:

In a prosecution under this section, a map produced or reproduced by any municipal or county engineer for the purpose of depicting the location and

boundaries of the area on or within 1,000 feet of any property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or a true copy of such a map, shall, upon proper authentication, be admissible and shall constitute prima facie evidence of the location and boundaries of those areas, provided that the governing body of the municipality or county has adopted a resolution or ordinance approving the map as [an?] official finding and record of the location and boundaries of the area or areas on or within 1,000 feet of the school property.

The quoted portion of the statute is part of an amendment ("amendment"), *L.*1988, *c.* 44, § 3, that became effective June 28, 1988, several months after the crime.

Our courts have followed the lead of federal courts in defining the scope of the constitutional prohibition against enacting *ex post facto* laws. *In re Kaplan,* 178 *N.J.Super.* 487, 495, 429 *A.*2d 590 (App.Div.1981). *Beazell v. Ohio,* 269 *U.S.* 167, 169–170, 46 *S.Ct.* 68, 68, 70 *L.Ed.* 216, 217–218 (1925), defines the prohibition as follows:

... [A]ny statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.* The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

Measured against that definition and its rationale, the amendment is not an *ex post facto* law.

The amendment did not create the crime of which defendant was convicted. Nor did it increase the punishment for the crime or deprive defendant of a defense that was available when he committed it. The amendment is an evidentiary rule that permits the State to present authenticated written evidence of a fact in lieu of live testimony.

██ Changes in evidentiary rules enacted after commission of the crime are not *ex post facto* laws unless they are a guise for depriving defendants of a "substantial right." *Thompson*

*v. Missouri*, 171 *U.S.* 380, 386–387, 18 *S.Ct.* 922, 924, 43 *L.Ed.* 204, 207 (1898). In that capital case the Legislature enacted a post-crime evidence rule that rendered admissible for comparison purposes documents indisputably handwritten by the alleged writer of a disputed handwritten document to establish the authenticity of the disputed document. The Court held that the legislation was not an *ex post facto* law:

> ... [W]e cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offense criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offense. Nor can the new rule introduced by it be characterized as unreasonable—certainly not so unreasonable as materially to affect substantial rights of one put on trial for crime. ... The statute did nothing more than remove an obstacle arising out of a rule of evidence that withdrew from the consideration of the jury testimony which, in the opinion of the legislature, tended to elucidate the ultimate, essential fact to be established, namely, the guilt of the accused. Nor did it give the prosecution any right that was denied to the accused. [*Id.* at 387, 18 *S.Ct.* at 924–925, 43 *L.Ed.* at 207–208.]

That holding has recently been cited with approval in *Collins v. Youngblood*, ── *U.S.* ──, ── n. 3, 110 *S.Ct.* 2715, 2719 n. 3, 111 *L.Ed.*2d 30, 39 n. 3 (1990). *See State v. Bethune*, 121 *N.J.* 137, 146, 578 *A.*2d 364 (1990) ("... [I]f we were to remand for a new trial, there is a strong likelihood that Ms. Foster's testimony would be admissible pursuant to *Evidence Rule* 63(33) (enacted subsequent to the *Bethune* trial), governing the tender-years exception to the hearsay rule.")

■ Defendant relies on our language in *State v. T.P.M.*, 189 *N.J.Super.* 360, 366–367, 460 *A.*2d 167 (App.Div.1983), where, in summarizing the federal definition of the *ex post facto* clause of the federal constitution, we said:

> The Clause prohibits any law which in relation to the past offense or its punitive consequences, alters the situation of the offender to his disadvantage. [Citations omitted.]

We did not say that when a post-crime evidentiary rule change makes it easier for the State to prove the elements of a crime the rule change is *ex post facto*. To be *ex post facto*, the new law must make a change in defining "the past offense or its punitive consequences." The amendment to *N.J.S.A.* 2C:35–7 made no such change.

Affirmed.