**AFFIRM; Opinion Filed April 8, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-12-00636-CR

_____

### CEDRIC DERRELL MILLAGE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

_____

### On Appeal from the 296th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 366-80247-07

## MEMORANDUM OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Moseley

A jury convicted Cedric Derrell Millage of two counts of aggravated sexual assault, and the trial court sentenced him to life in prison. In four issues, Millage asserts: (1) the trial court should have dismissed the second prosecution of him on double jeopardy grounds; (2) his trial counsel was ineffective; (3) the trial court should have excluded the complainant's in-court identification of Millage because she previously had been subjected to hypnosis; and (4) he was denied his Sixth Amendment right to present a full defense. The background of the case and the evidence adduced below are well known to the parties; thus, we do not recite them here. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

## BACKGROUND

On September 21, 2000, the victim, who used the pseudonym Miranda, was raped by a man. The facts of the assault—other than the issue of identity—are not at issue in this appeal and, therefore, we do not recite them in detail.

The investigator working on the case was David Wilson. After the assault, Wilson showed Miranda a photo lineup that did not contain Millage's picture. (Millage was not a suspect at that time). Miranda did not identify anyone in the lineup as the attacker. In 2002, the police showed Miranda a second photo lineup that also did not include Millage's picture; again, she did not identify anyone as the attacker. Likewise, the initial DNA results from the rape kit performed on Miranda did not identify any suspects.

Miranda described the vehicle that her attacker drove as a small, dark-colored SUV. Miranda provided the police with a few numbers and letters that she thought were on the license plate. Later, Miranda was hypnotized using forensic hypnosis; Wilson testified the police were trying to determine whether she could remember the license plate number on the SUV. But after the hypnosis session, Miranda was unable to provide additional information about the license plate.

In 2005, Wilson began to reexamine Miranda's case. Wilson testified that in 2005, he "went to a school and I heard of a new process to recover DNA off of victims and suspects. . . . With that information, I took the clothes back out of evidence." He sent Miranda's shirt, jacket, and panties to Orchid Cellmark Laboratories, a laboratory that conducts DNA testing. As a result of the testing, Wilson identified Millage as a suspect.

In November 2006, Miranda was shown another photo lineup, which included Millage's picture (the "third photo lineup"). Miranda did not identify Millage as her attacker; in fact, she

identified a different person. Finally, in 2011, Miranda saw Millage in person. At that time, she recognized him as the attacker.

LAW & ANALYSIS

**A.    Double Jeopardy**

Wilson retired from the police department approximately three years before the case proceeded to trial. When he retired, he gave his casebook to the district attorney. During discovery before the first trial, the State informed defense counsel that there were no photo lineups that included Millage's picture and that Miranda could not identify the perpetrator of the offense. However, the Friday before the first trial began, the State found the third photo lineup in Wilson's files.

The State informed the defense about the third photo lineup on the following Monday and provided a copy of the lineup on Monday after the trial began. Once the defense learned about the third photo lineup, and that Miranda was going to identify Millage as the attacker, the defense decided it would need an expert to testify about eyewitness identifications. Because the expert the defense would want to use was not available to participate in the first trial, the defense moved for a mistrial.

During a hearing on the defense's motion for mistrial, defense counsel stated: "And I'm not blaming - - we are not blaming the prosecution for this. Quite frankly, I think that these disclosures were made by Detective Wilson - - to him yesterday for the first time during the trial." The prosecutor stated:

> Your Honor, there was no discovery order in this case. I - - since about August, I've been asking [defense counsel] if he wanted to come in and get a copy of our file. Finally, he told me that he just wanted to know about the photo lineups, so I told him about the three - - there were three photo lineups that were shown to the victim early on, with three different suspects; and she wasn't able to identify anybody in that one.

–3–

The prosecutor then informed the Court that he found out about the third photo lineup on Friday afternoon before trial at approximately 4:00 p.m. The third photo lineup was conducted in November 2006, nearly five years before the trial. The trial judge granted the defense's motion for mistrial, and agreed that the prosecutors were not to be blamed for the error.

Before the second trial began, Millage filed a pre-trial application for writ of habeas corpus seeking relief from double jeopardy and a motion to dismiss the indictment. The trial court conducted a hearing. No testimony was offered, although the trial court did admit portions of the transcript from the first trial addressing the mistrial. Defense counsel stated during the habeas corpus hearing that he was "not casting any aspersions on the attorneys for the state." At the conclusion of the hearing, the trial court stated it did "not find that the State acted intentionally or in a manner to goad the Defendant into asking for a mistrial. I think the Defense at the time that we were proceeding with this saw it that way. The Court denies the writ."

In his first issue, Millage asserts the trial court erred by not dismissing the second prosecution on double jeopardy grounds. We review a trial court's ruling on a pretrial writ of habeas corpus for an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 323 (Tex. Crim. App. 2006). In conducting this review, we view the facts in the light most favorable to the trial court's ruling and defer to the trial court's implied factual findings that are supported by the record. *Id*. at 325–26.

Millage argues that the district attorney's office intentionally failed to produce the third photo lineup or, alternatively, Wilson intentionally withheld the third photo lineup. He asserts that the court of criminal appeals' opinion in *Ex Parte Masonheimer*, 220 S.W.3d 494 (Tex. Crim. App. 2007) applies to the facts before us. He argues that *Masonheimer* held that where the State, which includes "the entire prosecution team," intentionally withholds *Brady* evidence, the defendant suffers the same harm as when the State intentionally goads or provokes the defendant

into moving for a mistrial. He asserts that Wilson was part of the prosecution team and that the prosecution team intentionally withheld *Brady* evidence, which caused the first trial to end in a mistrial. Therefore, he argues, under *Masonheimer*, the second trial was barred by double jeopardy.

In *Masonheimer*, the court of criminal appeals "required intentional conduct by the State, which resulted in harm to the defendant." The *Masonheimer* court held that re-prosecution of the defendant was jeopardy barred because "the State had intentionally failed to disclose exculpatory evidence with the *specific intent* to avoid the possibility of an acquittal." *Washington v. State*, 326 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Masonheimer,* 220 S.W.3d at 509).

In this case, the defense conceded that the exculpatory evidence was not withheld with the specific intent to avoid the possibility of Millage's acquittal. Rather, the defense clearly told the trial court that it did not "blame" the prosecutors for failing to disclose the third photo lineup sooner, an assessment with which the trial court agreed. Further, there was no evidence before the trial court at the motion for mistrial or on the defense's application for a writ of habeas corpus that indicated that Wilson (or anyone else) intentionally withheld the evidence. Rather, it appeared the State did not realize it had the third photo lineup, which was in Wilson's file that had been given to the prosecutor's office approximately three years earlier when Wilson retired.

Viewing the record in the light most favorable to the trial court's ruling, no action by the prosecution or Wilson indicates that either had the intent to withhold *Brady* material, goad Millage into a mistrial, or avoid the possibility of his acquittal. *See Masonheimer*, 220 S.W.3d at 507. Rather, at the time that it sought the mistrial, defense counsel specifically stated "we are not blaming the prosecution for this." The trial court at that time stated: "And I also want to point out that I'm not blaming you, [counsel for State and defense]. It is just a fact of - - well,

even the District Attorney's office has changed over since then." We conclude the trial court did not abuse its discretion by denying Millage's application for a writ of habeas corpus. We overrule Millage's first issue.

## B.      Ineffective Assistance of Counsel

In his second issue, Millage argues his trial counsel was ineffective for failing to renew his motion to dismiss based on double jeopardy when Wilson testified at the second trial that he provided all his materials to the prosecutor years before the first trial. Millage asserts that Wilson's testimony—that when he retired from the Plano Police Department in 2009, he gave his casebook to the district attorney's office—indicates the district attorney's office suppressed the third photo lineup until after the first trial commenced. Because the information about Wilson giving his casebook to the prosecutor's office was not before the trial court when it ruled on Millage's motion for mistrial and application for a writ of habeas corpus, Millage argues his attorney should have renewed the motion to dismiss when this information came out in the second trial.

To successfully assert an ineffective assistance of counsel challenge, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). An ineffective assistance claim must be "firmly founded in the record," and the record must "affirmatively demonstrate" the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Generally, a silent record providing no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander*, 101 S.W.3d at 110–11. Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Id*. This is true with regard to the question of deficient

performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight—where counsel's reasons for failing to do something do not appear in the record. *Id.* "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Id.* at 111. Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Although Millage filed a motion for new trial, his motion did not allege that his counsel was ineffective, and he did not otherwise develop a record explaining why counsel engaged in the challenged conduct. The record is silent as to counsel's strategy or reasons for not raising the double jeopardy issue during the second trial. This Court will not speculate as to what counsel's trial strategy might have been with regard to the alleged error. Moreover, we cannot say that counsel's conduct in failing to make the objection about which Millage now complains is "so outrageous that no competent attorney would have engaged in it." *See Garcia*, 57 S.W.3d at 440; *accord Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). The silent record in this case cannot overcome the presumption of effective assistance of counsel. *See Goodspeed*, 187 S.W.3d at 392.

Even if we were to determine that Millage showed his counsel's performance fell below an objective standard of reasonableness, there is no evidence that a reasonable probability exists that, but for counsel's alleged error, the result of the proceeding would have been different. *See Rylander*, 101 S.W.3d at 110. The trial court had already considered Millage's motion and denied it. Nothing in the record indicates that Wilson's testimony during the second trial would have caused the trial court to grant Millage's motion the second time the issue was raised. We overrule Millage's second issue.

## C.    In-Court Identification Testimony

In his third issue, Millage asserts the trial court erred by not excluding Miranda's in-court identification of him during the trial because she previously was subjected to hypnosis. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *see also Tumlinson v. State*, 757 S.W.2d 440, 444 (Tex. App.—Dallas 1988, pet. ref'd) (concluding the trial court acted within its discretion by excluding an audiotape of a hypnosis session of the defendant). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We uphold the trial court's ruling if it was correct on any theory reasonably supported by the evidence and applicable to the case. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Millage argues the State did not meet its heavy burden to show that Miranda's testimony identifying Millage as the attacker was trustworthy. The State replies that Miranda's testimony was not hypnotically enhanced and, even if it was, it was reliable.

The leading Texas case on the issue of hypnotically enhanced testimony is *Zani v. State*, 758 S.W.2d 233 (Tex. Crim. App. 1988). In *Zani*, the court of criminal appeals stated that the proponent of hypnotically refreshed testimony bears a heavy burden. Outside of the jury's presence, the proponent must demonstrate to the trial court, by clear and convincing evidence, that the testimony is trustworthy. In assessing the trustworthiness, the trial court should be alert to the four-prong dangers of hypnosis: hypersuggestibility, loss of critical judgment, confabulation, and memory cementing. *Zani*, 758 S.W.2d at 243.

We do not believe *Zani* applies to the case before us. In *Zani*, the only witness to a murder was hypnotized approximately 13 years after the murder occurred, and the hypnosis was intended to help identify the perpetrator. Immediately after the hypnosis session, the witness

–8–

identified the defendant as the perpetrator. The timeframe was reversed in the case before us, and the purpose of the hypnosis was different. Here, Miranda was hypnotized after the assault occurred, the hypnosis was intended to help determine the letters and numbers on the perpetrator's license plate, and Miranda was unable to identify any of the persons in the photo lineup showed to her after the hypnosis (the lineup did not contain Millage's picture). It was not until nearly 11 years after the hypnosis session that Miranda identified Millage. In the intervening years, Miranda was shown a lineup that included Millage's picture, but she selected a different person as the attacker, which further indicates the hypnosis did not impact her ability to identify the attacker. The facts before us are significantly different than those before the court in *Zani*. We conclude that Miranda's testimony was not hypnotically enhanced, and we need not consider the *Zani* factors. The trial court did not abuse its discretion by not excluding the in-court identification on this basis. We overrule Millage's third issue.

## D.    Exclusion of Testimony for "Lab Bias"

In his final issue, Millage argues he was denied his Sixth Amendment right to present a full defense when the trial court refused to allow his DNA expert to testify regarding "lab bias." We again review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Cameron*, 241 S.W.3d at 19.

One point that was contested during the trial was the conclusion drawn by Orchid Cellmark Laboratories, the laboratory that conducted the DNA testing. The defense sought to show that the laboratory first identified an allele in the DNA found on Miranda's clothing as a "good allele," which would have eliminated Millage as a contributor to the DNA, but later called it a "stutter," which would not have eliminated Millage as a potential contributor.

The defense presented its DNA expert, Dr. Greg Hampikian, to testify about "lab bias." Outside of the jury's presence, he testified to his opinion about lab bias. Hampikian's testimony

–9–

was: "That context can influence experts, including myself. That I have studied that effect and that I think there have been . . . I mean, I have heard contradictory conclusions about this 10 allele, for example." When defense counsel asked Hampikian what opinion he would be giving and whether his opinion was that context can influence experts, Hampikian responded: "Yeah. I don't know what questions I'm going to be asked, to be honest. I don't have a prepared opinion on that. I think it is a real allele. . ." He did not know whether he was going to be asked whether context can influence experts, but "I've heard contextual bias; and since that's one of my areas of expertise, that would be a legitimate area for me." Hampikian had the following exchange with the trial judge:

> THE COURT: Let me ask you again. Do you have any evidence or opinions as with regard to contextual bias about any particular analyst in this particular case?
> THE WITNESS: Nothing firm. Now, I have some general impressions that I think I have shared.
> THE COURT: Like contextual bias among analysts generally?
> THE WITNESS: Yes.
> THE COURT: Nothing specific in this case or the methodologies in this case?
> THE WITNESS: All human beings, including myself; and I will testify to that.

Defense counsel then asked the witness whether it was his "general opinion that context can influence experts" and whether that would be the opinion he would be offering. Hampikian confirmed that was his opinion that he would be offering. He also confirmed he had no "direct evidence of anybody doing anything wrong" in the Millage case.

Concerning the admissibility of expert testimony, rule of evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. The proponent of the evidence must show by clear and convincing proof,

that the evidence is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

Hampikian's proposed testimony regarding "lab bias" was not relevant to the issues before the jury. Hampikian confirmed he had no evidence of lab bias in this case, but stated that every person has biases. Absent any evidence of lab bias in this case, the substance of Hampikian's proposed testimony—that "context can influence experts" and "[a]ll human beings" have bias—was more appropriate for cross-examination than for expert testimony. Because Hampikian's testimony about "lab bias" was not relevant to this case, the trial court did not abuse its discretion by excluding this testimony. We overrule Millage's fourth issue.

We affirm the trial court's judgment.

/Jim Moseley/
JIM MOSELEY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120636F.U05

–11–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CEDRIC DERRELL MILLAGE, Appellant

No. 05-12-00636-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-80247-07.
Opinion delivered by Justice Moseley.
Justices Francis and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 8th day of April, 2014.


/Jim Moseley
JIM MOSELEY
JUSTICE